Roxanne DEAN et al., Plaintiffs,

v.

Earl BUTZ, in his capacity as Secretary of the Department of Agriculture, and R. E. Mellinger, in his capacity as Program Director for the Western Region, Food and Nutrition Service, Defendants.

Civ. No. 76–0337.

United States District Court, District of Hawaii.

Feb. 28, 1977.

Stanley E. Levin, Brenton L. Rogozen, Legal Aid Society of Hawaii, Honolulu, Hawaii, for Dean, Bohn, and others.

T. Brian Tsujimura, Deputy Atty. Gen., Honolulu, Hawaii, for Dept. of Soc. Services & Hsg.

Howard T. Chang, Asst. U.S. Atty., Honolulu, Hawaii, for defendants.

## MEMORANDUM AND ORDER

WONG, District Judge.

### I. BACKGROUND

Plaintiff Department of Social Services and Housing (DSSH) of the State of Hawaii

provides funds to recipients under the Aid to Families of Dependent Children (AFDC) and General Assistance (GA) programs administered by the DSSH to pay security deposits required for housing. Hawaii Public Welfare Manual § 3305.2. Payment for security deposits are paid only once. Payment is made to the landlord directly or through the recipient. When the tenancy is terminated, one of three things happens to the security deposit. It may be returned to the DSSH, used as a security deposit for new housing, or the recipient may retain the funds as a resource under the DSSH's resource retention policy.

On April 21, 1976, a DSSH hearings officer issued a fair hearing decision which held that funds for security deposits are nonrecurring lump-sum payments which should not be considered income in determining one's food stamp eligibility or the cost of food stamps. The DSSH informed Defendant Mellinger of this decision. Mr. Mellinger replied by a letter dated June 9, 1976 (hereinafter referred to as "the Mellinger letter"). The letter requires the DSSH to count as income funds paid by the DSSH for security deposits, citing Sections 2264.-8(1a) and 2322 of the Food Stamp Certification Manual, FNS (FS) Instruction 732–1.[1]

Thereafter, the plaintiffs initiated this action for injunctive and declaratory relief. They alleged (1) that the Administrative Procedure Act, 5 U.S.C. § 551, *et seq.*, and the Freedom of Information Act, 5 U.S.C. § 552, have been violated because the Mellinger letter was not properly promulgated and should have been published in the Federal Register, (2) that the Mellinger letter is void because it conflicts with established regulations, and (3) that the Food Stamp Act, 7 U.S.C. §§ 2011–2026, has been violated because the security deposits should not be considered income to welfare recipients.

On November 29, 1976, this Court certified the class. The class is defined to be all present or potential food stamp recipients in Hawaii who (1) are recipients of food stamp or cash assistance, or both, from the DSSH, (2) have been paid a one-time rental security deposit by the DSSH, and (3) have been, are, or will be deprived of the full benefits of the food stamp program because of the defendants' policy of requiring those rental security deposits to be counted as "income" for purposes of determining food stamp eligibility and the cost of food coupons.

The representative members of the class have moved for summary judgment. The defendants have moved to dismiss or, in the alternative, for summary judgment. There being no material issues of fact in dispute, summary judgment is appropriate. Rule 56, Federal Rules of Civil Procedure.

## II. DISCUSSION

### A. *Standing*

■ The federal food stamp program was initiated in 1964. Its purpose is to alleviate hunger and malnutrition among low-income households. 7 U.S.C. § 2011; 7 C.F.R. § 270.1(a); *United States Department of Agriculture v. Moreno,* 413 U.S. 528, 529, 93 S.Ct. 2821, 37 L.Ed.2d 782 (1973). The members of the class are the intended beneficiaries of the food stamp program.

■ The defendants contend that the DSSH does not have standing in this action since it does not suffer any direct financial impact. The DSSH does not argue otherwise. Therefore, the defendants' motion to dismiss as to the DSSH is granted. *See Association of Data Processing Service v. Camp,* 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970); *Sierra Club v. Morton,* 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972).

### B. *Publication in the Federal Register*

The plaintiffs contend that the Mellinger letter is a directive of the Department of Agriculture that substantially and directly affects the class' substantive rights. They argue that 5 U.S.C. § 552(a)(1)(D) requires that the Mellinger letter be published in the

---

1. These sections appear as Sections 3838.4(8)(a) and 3843.2, respectively, of the Hawaii Food Stamp Manual.

Federal Register. The defendants counter that the letter cannot be characterized as rule making inasmuch as the defendants have merely applied an existing regulation, 7 C.F.R. § 271.3(c)(1)(i)(f), to a new type of assistance payment created by the DSSH.[2] They argue that the Mellinger letter is a clarification, an interpretation that need not be published in the Federal Register. See 5 U.S.C. § 552(a)(2); 5 U.S.C. § 553(b)(A).

In *Lewis v. Weinberger,* 415 F.Supp. 652, 659 (D.N.M.1976), a case involving medical care to off-reservation Indians, the court said:

In determining whether particular policy or interpretive statements are required to be published or whether they need only be made available, subsections (a)(1) and (a)(2) of section 552 [of Title 5 U.S.C.] must be read together: " 'statements of policy' must be available and 'statements of general policy' must be published; 'interpretations which have been adopted by the agency' must be available and 'interpretations of general applicability' must be published." K. Davis, Administrative Law Treatise § 3A.7 (Supp.1970)

. . . .

First, we must examine the Mellinger letter to determine whether it is a statement of policy or an interpretation. The Mellinger letter cites provisions of FNS (FS) Instruction 732–1 and the Hawaii Food Stamp Manual as requiring the DSSH to include the monies for security deposits as income. The Court finds that the letter is an interpretation rather than a statement of policy.

Next, we must determine whether the Mellinger letter is an interpretation of general applicability. In *Lewis, supra,* the court said that

an administrative interpretation [is *not*] deemed to be "of general applicability" if: (1) only a clarification or explanation of existing laws or regulations is expressed; *and* (2) no significant impact

upon any segment of the public results. Therefore, such material need not be published. Also within the availability requirement of 552(a)(2)(B) are statements affecting only an agency's internal or housekeeping operations and adjudicatory opinions which may be relied upon as precedents by the agency.

415 F.Supp. at 659 (citations omitted; emphasis added). This test was recently adopted by the Ninth Circuit Court of Appeals in *Anderson v. Butz,* 550 F.2d 459 at 462–463 (9th Cir. 1977).

The Mellinger letter does not involve housekeeping operations nor adjudicatory opinions. It is a clarification of existing regulations. It, however, does have a significant impact upon a segment of the public, the members of the class here. If the monies for security deposits are counted as income to the members of the class, the class members must pay more for food stamps. The members of the class all exist on public assistance. The effect of an increased cost for food stamps has a substantial impact upon their limited budgets. Therefore, under the Ninth Circuit's test, the regulation is of general applicability. Since the Mellinger letter was not published in the Federal Register, as required by 5 U.S.C. § 552(a)(1)(D), it is invalid. *Hotch v. United States,* 212 F.2d 280 (9th Cir. 1954).

### C. Conflict with established regulations

The plaintiffs argue that the Mellinger letter violates the federal food stamp regulations on one of three alternative grounds. First, security deposits are nonrecurring lump-sum payments which are excluded from income by 7 C.F.R. § 271.3(c)(1)(ii)(e). Second, security deposits should be excluded from income as loans under 7 C.F.R. § 271.3(c)(1)(ii)(f). Third, security deposits should be considered resources under 7 C.F.R. § 271.3(c)(4)(ii)(a); not income.

### 1. Nonrecurring lump-sum payments

7 C.F.R. § 271.3(c)(1)(ii)(e) provides that

---

**2.** The State of Hawaii is the only state which provides rental security deposits for welfare recipients.

[m]onies received from insurance settlements, sale of property (except for property related to self-employment provided for in subdivision (c)(1)(i)(b) of this section), cash prizes, awards, and gifts, inheritances, retroactive lump-sum Social Security or Railroad Retirement pension payments, income tax refunds and similar nonrecurring lump-sum payments . .

are to be excluded from income. The plaintiffs argue that the security deposits are nonrecurring lump-sum payments since they are provided only once in a lump-sum.

The defendants say that the security deposits are income under 7 C.F.R. § 271.-3(c)(1)(i)(f). 7 C.F.R. § 271.3(c)(1)(i)(f) includes as income "payments received from federally aided public assistance programs, general assistance programs, or other assistance programs based on need." The defendants argue that the security deposits are paid by the DSSH for public assistance purposes and are based on need.

Literally, payments for security deposits are nonrecurring lump-sum payments. Payment is made only once in a lump sum. The question is whether they are of the type that are excluded from income.

7 C.F.R. § 271.3(c)(1)(i)(f) does include as income payments from public assistance programs. The plaintiffs argue that this refers only to regular payments, e. g., a recipient's monthly grant. The Court agrees with the plaintiffs. This is consistent with the provision that nonrecurring lump-sum payments are to be excluded from income. A monthly grant is a regular payment; a one-time payment of a security deposit is not.

The defendants argue that Hawaii is the only jurisdiction which makes such payments. Hence, they argue, it cannot be a similar payment. The Court thinks the defendants misread the regulation. "Similar" does not refer to whether other jurisdictions make the same type of payment. Indeed, each state must propose its own plan for the operation of the food stamp program within its jurisdiction, consistent with the Food Stamp Act and the regulations

thereunder. 7 C.F.R. § 271.8. Rather, "similar" means similar to the examples enunciated in 7 C.F.R. § 271.3(c)(1)(ii)(e).

Therefore, the Court concludes that payments for security deposits are nonrecurring lump-sum payments under 7 C.F.R. § 271.3(c)(1)(ii)(e) and are not to be included as income for food stamp purposes.

### 2. *Loans*

7 C.F.R. § 271.3(c)(1)(ii)(f) excludes loans from income for food stamp purposes. The plaintiffs argue that the monies for security deposits should be considered loans since the recipient incurs an obligation to return the monies. The argument is without merit.

At the time the security deposit is paid, the recipient has no obligation to repay the money to the DSSH. If the tenancy is terminated, the money may be returned to the DSSH or used as a security deposit for new housing. Should the money be returned to the recipient and not used as a security deposit for new housing, the recipient may retain the money as a resource. If the refunded security deposit raises the recipient's resources above the allowable maximum, the excess may be recovered by the DSSH by a reduction in the recipient's monthly grant. It is only in this latter case that the recipient can be said to have an "obligation" to repay the money. The obligation does not necessarily exist. Therefore, it cannot be said that the funds for a security deposit are a loan.

### 3. *Resources*

7 C.F.R. § 271.3(c)(4)(i) provides that a food stamp household is allowed a maximum of $1,500 in resources. The plaintiffs contend in their memorandum that the monies for the security deposits should be considered a resource. At the hearing on the motions, the plaintiffs did not argue the point. It is unclear whether the plaintiffs have abandoned this argument, but in any regard it is without merit.

The initial question is whether a payment is income before it becomes a resource. Since it may ultimately be both, to say that it is the latter does not preclude it from also being classified as income. Furthermore, in order to be a resource, the monies must be liquid and readily available. 7 C.F.R. § 271.3(c)(4)(ii)(a). The plaintiffs say in their memorandum that the monies for the security deposit become a resource only when they are no longer used as a security deposit and have been returned to the recipient. We are concerned, however, with the point in time when the DSSH provides the monies for the security deposit. At that time, the monies are not available to the recipient. Therefore, the monies for a security deposit cannot be a resource under 7 C.F.R. § 271.3(c)(4)(i).

### D. *Violation of the Food Stamp Act*

The plaintiffs argued in their memorandum that the monies for security deposits cannot be considered income for food stamp purposes because they do not actually increase the household's food purchasing power. The plaintiffs did not argue this point at the hearing. Again, it is unclear whether the plaintiffs have abandoned this argument, but it too is without merit.

The plaintiffs cite several cases which have held that a household's food purchasing power must be increased before funds are considered income for food stamp purchases. *Turchin v. Butz,* 405 F.Supp. 1263, 1268–70 (D.Minn.1975) (training allowances); *Gutierrez v. Butz,* 415 F.Supp. 827, 830–1 (D.D.C.1976) (anticipated income for migrant workers); *Thomas v. Butz,* Civil No. 73–336 (D.Ariz. Jan. 20, 1976), slip opinion at 3 (student loans); *Rivera v. Santiago,* Civil No. 76–171 (D.P.R. Sept. 13, 1976), Pov.L.Rep. (CCH) ¶ 23,658 (educational grants). The theory is that the Food Stamp Act's avowed purpose of promoting adequate nutritional levels among low income households cannot be met if funds which are not actually available to the food stamp purchaser are considered income. *Hein v. Burns,* 402 F.Supp. 398, 404–5 (D.Iowa 1975), *rev'd sub nom. Knebel v. Hein,* ——

U.S. ——, 97 S.Ct. 549, 50 L.Ed.2d 485 (1977); *Turchin,* 405 F.Supp. at 1268–70; *Gutierrez,* 415 F.Supp. at 830–1.

In *Hein, supra,* the plaintiff received a transportation allowance from the State of Iowa to defray the costs of commuting to a nurses' training program. This allowance was included as income for food stamp purposes. A three-judge district court held this to be improper because the inclusion of the travel allowance as income increased the cost of the food stamps and this was contrary to the purpose of the Food Stamp Act. 402 F.Supp. at 405.

The Supreme Court reversed. The Court held that the Secretary of Agriculture had broad authority to define income for food stamp purposes and had exercised his authority validly. —— U.S. ——, 97 S.Ct. at 552. The Court said that the Secretary had allowed only a few specific deductions from income. *Id.* Of travel allowances, the Court said that the regulations

do not include any itemized deductions for commuting expenses of either students or workers. Instead, there is a standardized deduction of 10% of the wages or training allowance (including tuition grants and travel allowances), which is intended to cover incidental expenses.

*Id.* at ——, 97 S.Ct. at 553 (footnote omitted).

The Court also said that

[t]he District Court's primary reason for invalidating the regulation was its view that transportation grants do not increase food purchasing power. But the grant does give a household more food purchasing power than another household which receives no grant but incurs similar nondeductible expenses related to training or employment.

*Id.* (footnote omitted).

Thus, the Supreme Court did not overrule the district court's reasoning that the funds must actually increase the household's food purchasing power to be included as income. In *Hein,* the Court found that the food purchasing power had been increased.

One can draw distinctions between *Hein* and this case, but the reasoning in *Hein* is compelling. Here, the payment of the security deposits by the DSSH alleviates an expense that the plaintiffs face. If the DSSH did not provide monies for the security deposits, the plaintiffs would have to pay such deposits from their monthly assistance grants. Hawaii Public Welfare Manual § 3305.2(1)(a) provides that the amount the DSSH will pay shall not exceed the shelter maximum (based upon family size) as provided in Section 3304.2(1) of the Hawaii Public Welfare Manual. Should the security deposit exceed the shelter maximum, the recipient would have to pay the excess from the monthly assistance grant. Thus, in effect, the payment of the security deposit by the DSSH does increase the class' food purchasing power for the month in which the deposits are paid.

## III. CONCLUSION

In light of the foregoing, the Court concludes that the Mellinger letter is invalid inasmuch as it is an interpretation of general applicability which should have been published in the Federal Register and monies paid by the DSSH for security deposits are a nonrecurring lump-sum payment that is excluded from income for purposes of determining food stamp eligibility and the cost of food stamps.

Accordingly, IT IS HEREBY ORDERED that:

1. The plaintiffs' motion for summary judgment is granted. The defendants' motion to dismiss as to Plaintiff DSSH is granted. In all other respects, the defendants' motion is denied.

2. Payments made by the DSSH on behalf of the members of the class for security deposits for housing shall be excluded from income for the purposes of determining food stamp eligibility and the cost of food stamps.

3. The Mellinger letter is invalid and the defendants are permanently enjoined from implementing it.

4. The members of the class are entitled to a restoration of all food stamp benefits lost as a result of the Mellinger letter.

5. Defendant Butz, or his successor in office, shall notify, at his expense, all households currently participating in the food stamp program who may have been adversely affected by the Mellinger letter that they are entitled to retroactive reimbursement of lost food stamp bonuses.

6. Defendant Butz, or his successor in office, shall notify, at his expense, all former participants in the food stamp program who were adversely affected by the Mellinger letter of their entitlement to retroactive reimbursement of lost food stamp benefits.