661 F.2d 1001
 Crezette ALLEN, Linda Myers and Isaiah Myers, Individually
and on behalf of other persons similarly situated,
Appellants,
v.
Robert BERGLAND, Individually and in his capacity as United
States Secretary of Agriculture; Lewis Straus, Individually
and in his capacity as Administrator of the United States
Department of Agriculture's Food and Nutrition Service;
David Alspach, Individually and in his capacity as
Administrator of the Southeast Region of the Department of
Agriculture's Food and Nutrition Service; Nancy Snyder,
Individually and in her capacity as Director of the Food
Stamp Division of the United States Department of
Agriculture's Food and Nutrition Service; The United States
Department of Agriculture; Virgil Conrad, Individually and
in his capacity as Director of the South Carolina Department
of Social Services; and the South Carolina Department of
Social Services, Appellees.
 No. 79-1616.
 United States Court of Appeals,
Fourth Circuit.
 Argued March 2, 1981.
Decided Oct. 7, 1981.
 
 Cynthia Schneider, Food Research & Action Center, Washington, D. C. (Maureen J. Feran, Neighborhood Legal Assistance Program, Inc., Charleston, S. C., on brief), for appellant.
 Heidi M. Solomon, Asst. U. S. Atty., Edwin E. Evans, Asst. Atty. Gen., Columbia, S. C. (Thomas E. Lydon, Jr., U. S. Atty., Wm. Howell Morrison, Asst. U. S. Atty., Daniel R. McLeod, Atty. Gen., Raymond G. Halford, Deputy Atty. Gen., Robert D. Cook, Asst. Atty. Gen., Columbia, S. C., on brief), for appellees.
 Before BUTZNER, PHILLIPS and MURNAGHAN, Circuit Judges.
 JAMES DICKSON PHILLIPS, Circuit Judge:
 
 
 1
 In this case plaintiffs Crezetta Allen and Isaiah and Linda Myers mount a three-pronged attack on the interpretation given by the United States Department of Agriculture (USDA) to its regulations concerning treatment of nonrecurring lump-sum payments received under the Aid to Families with Dependent Children (AFDC) program for purposes of computing the "income" of a recipient who is also entitled to benefits under the Food Stamp program. Finding the challenged interpretation not plainly erroneous, not invalid for want of promulgation under the Administrative Procedure Act (APA) and not violative of the equal protection and due process clauses of the fifth and fourteenth amendments, we affirm the district court's grant of summary judgment in favor of the USDA.
 
 
 2
 * At issue is the USDA's interpretation of 7 C.F.R. § 271.3(c)(1)(i)(f) and (c) (1)(ii)(e) (1976), which provide:
 
 
 3
 (1) Definition of income. (i) Monthly income means all income which is received or anticipated to be received during the month. To compute maximum monthly income for purposes of determining eligibility, income shall mean any of the following but is not limited to:
 
 
 4
 ....
 
 
 5
 (f) Payments received from federally aided public assistance programs, general assistance programs, or other assistance programs based on need;
 
 
 6
 ....
 
 
 7
 (ii) The following shall not be considered income to the households (this list is inclusive and no other exclusions from income shall be allowed):
 
 
 8
 ....
 
 
 9
 (e) Monies received from insurance settlements, sale of property (except for property related to self-employment provided for in subdivision (c)(1)(i)(b) of this section), cash prizes, awards, and gifts, inheritances, retroactive lump-sum Social Security or Railroad Retirement pension payments, income tax refunds and similar nonrecurring lump sum payments.
 
 
 10
 (Emphasis added.)
 
 
 11
 In 1974, the USDA issued the Food Stamp Certification Handbook, a manual of instructions for USDA and state officials concerning the operation of the Food Stamp program. Instruction 2322 found in this Handbook requires that "(a)ll income received by PA (public assistance) households, including the federally-aided public assistance grant ... be counted in determining adjusted net monthly food stamp income for basis of issuance purposes.... PA households will receive only the income exclusions and deductions provided in 2263 and 2264." Instruction 2263, in turn, essentially tracks the language of 7 C.F.R. § 271.3(c)(1)(ii)(e) in providing for exclusions. Instruction 2322 then concludes with the statement that, "when the PA check is delayed beyond the first month of eligibility as is sometimes the case for households whose PA eligibility has recently been established," the amount of the check may be averaged or the household provided a varying purchasing requirement or short certification period to cover the period when the check is received.
 
 
 12
 On the authority of these Instructions, the USDA has consistently directed state agencies administering the Food Stamp program to treat lump-sum payments from the AFDC program as "income" in computing the amount of a recipient's food stamp bonus. For example, on December 2, 1975, the Southeast Region Director of the Food and Nutrition ServiceS, the division of the USDA charged with administering the Food Stamp program, issued a regional letter in which, under the title "Lump-Sum Payments," he stated that, "in line with Section 2322 of 732-1, all monies from PA sources will be considered income." Similarly, in a July 1977 letter, the FNS advised its Midwest Region office that "retroactive public assistance checks" were considered as "income." Pursuant to the Food Stamp Act, the state agency charged with the responsibility of carrying out the Food Stamp program in each state must administer the program in accordance with the regulations promulgated by the USDA, as well as the USDA's instructions and interpretations.
 
 
 13
 Challenging the USDA's interpretation and application of 7 C.F.R. § 271.3(c) (1)(i)(f) and (c)(1)(ii)(e) in a manner that reduced their benefits, plaintiffs Allen and the Myers brought suit seeking injunctive and declaratory relief,[1] as well as a retroactive award of benefits, against the USDA, various former and present officials within the USDA who had or have responsibility for administering the Food Stamp program, the South Carolina Department of Social Services (DSS), the agency charged with administering the program in South Carolina, and the director of DSS.
 
 
 14
 To show that they had been adversely affected by the USDA's allegedly illegal instruction to include delayed AFDC lump-sum payments in income, plaintiffs presented evidence that Allen applied and became eligible for AFDC assistance in January 1977. Due to customary administrative delay, however, she did not receive any AFDC payments until June 1977. During the months of January through May, Allen did, on the other hand, receive her maximum allowable food stamp coupons at zero purchase price. In June 1977, prior to her certification for food stamps for that month, Allen received her retroactive AFDC benefits for the five months she had been eligible. The payment was made in a separate check for a lump sum of $376.20. At the same time, she also received her first monthly AFDC check in the amount of $74.52.
 
 
 15
 DSS personnel included Allen's retroactive lump-sum AFDC payment as "income," rather than as a "resource," for purposes of determining her food stamp eligibility and amount in June 1977.[2] For that reason, she received a food stamp bonus of only $20.00, permitting her to purchase $92.00 (the maximum allowable to Allen) worth of coupons for $72.00.
 
 
 16
 Isaiah and Linda Myers were certified as eligible for AFDC payments in September 1977. Again, as a result of administrative delay commonly experienced in DSS's processing of a claim for AFDC, the Myers did not receive a benefit check until October. At that time they received their regular monthly benefit of $96.12 and a nonrecurring retroactive lump-sum payment of $96.12 for the month of September.
 
 
 17
 DSS personnel included the nonrecurring retroactive payment as "income" to the Myers household for the month of October. As a result, the household received a food stamp bonus of $82.00 rather than the $113.00 bonus it would have received had the lump-sum payment not been included as income.
 
 
 18
 The case was submitted to the district court on cross-motions for summary judgment. The court granted defendants' motion for summary judgment because it concluded "that these regulations were valid, that the Secretary's interpretation is entitled to great weight ..., and that the express language and meaning is clear that all payments received from family assistance programs were to be considered income under the regulations." This appeal followed.
 
 II
 A.
 
 19
 The threshold question is whether the USDA's interpretation of 7 C.F.R. § 271.3(c)(1) was a plainly erroneous one. Courts are "obligated to regard as controlling a reasonable, consistently applied ... interpretation" of an agency's regulations by the agency charged with their enforcement, Ehlert v. United States, 402 U.S. 99, 105, 91 S.Ct. 1319, 1323, 28 L.Ed.2d 625 (1971), unless that interpretation is plainly erroneous or inconsistent with the regulation, Udall v. Tallman, 380 U.S. 1, 16-17, 85 S.Ct. 792, 801-802, 13 L.Ed.2d 616 (1965); accord Fairfax Nursing Center, Inc. v. Califano, 590 F.2d 1297 (4th Cir. 1979); Talley v. Mathews, 550 F.2d 911 (4th Cir. 1977).
 
 
 20
 The USDA's essential position is that, while "similar nonrecurring lump-sum payments" are excluded from "income" under 7 C.F.R. § 271.3(c)(1)(ii)(e), that exclusion does not apply to nonrecurring lump-sum AFDC payments because as payments received from a federally aided public assistance program they are to be included in income under 7 C.F.R. § 271.3(c)(1)(i)(f). Moreover, disparate treatment of delayed AFDC payments is justified on the basis of administrative convenience. Because the AFDC and Food Stamp programs are generally administered by the same agency at the state level, AFDC lump-sum payments are relatively easy to anticipate in comparison with other nonrecurring payments such as Social Security or Railroad Retirement pension payments. Since the nonrecurring lump-sum payments described in 7 C.F.R. § 271.3(c)(1)(ii)(e) were excluded from "income" because of the administrative problems that their inclusion would pose, see (1977) U.S.Code Cong. & Ad.News 1704, 2013-14, it is reasonable, contends the USDA, to interpret that subsection as not applying to delayed AFDC payments, which do not pose undue administrative problems.
 
 
 21
 Plaintiffs contend in opposition that, if subsections (c)(1)(i)(f) and (c)(1) (ii)(e) are to be harmonized, as they must be, see, e. g., United States v. Snider, 502 F.2d 645, 652 (4th Cir. 1974), the more reasonable interpretation is that regular monthly AFDC payments are to be included in income under (c)(1) (i)(f) while nonrecurring lump-sum AFDC payments are to be excluded under (c)(1) (ii)(e). Even assuming, however, that plaintiffs have demonstrated that their interpretation is more reasonable than that of the USDA, this demonstration does not discharge plaintiffs' burden of showing that the agency's interpretation is plainly erroneous. See, e. g., United States v. Larionoff, 431 U.S. 864, 97 S.Ct. 2150, 53 L.Ed.2d 48 (1977).
 
 
 22
 In support of their position, plaintiffs rely almost exclusively on Dean v. Butz, 428 F.Supp. 477 (D.Haw.1977), which is apparently the only other case in which a federal court has been asked to construe 7 C.F.R. § 271.3(c)(1). In Dean, the USDA had instructed the Hawaii Department of Social Services to include security deposits, which were also nonrecurring lump-sum payments made under the AFDC program, as "income" for food stamp purposes because the deposits were payments received from a federally aided public assistance program. The Dean court, however, agreed with the plaintiffs that section 271.3(c)(1)(i)(f) was intended to cover only regular monthly payments and noted that such an interpretation was "consistent with the provision that nonrecurring lump-sum payments are to be excluded from income." Id. at 481. With all respect, we simply disagree with the Dean court's analysis because it failed to perceive that the relevant inquiry is whether the department's interpretation is inconsistent with the regulations and not whether some other interpretation is consistent with those same regulations.
 
 
 23
 Making what we consider the appropriate analysis, the Florida Court of Appeals has accepted the USDA's ease of anticipation distinction and upheld the department's interpretation. Lewis v. State Dept. of Health & Rehabilitative Services, 366 So.2d 904 (Fla.Ct.App.1979). Confronted with an issue identical to the one before this court, the Lewis court adopted the reasoning of the ALJ who had heard the matter that, "(u)sing 7 C.F.R. § 271.3 and the Food Stamp Manual, it is apparent that the AFDC payments should have been counted as income as it is possible to anticipate such payment."
 
 
 24
 In further support of its position, the USDA relies upon legislative history, administrative history and basic canons of statutory construction as demonstrating the validity of its administrative interpretation under the proper standard of judicial review. While we think the agency's reliance upon administrative history[3] and canons of statutory construction[4] not persuasive, we agree that the Food Stamp Act's legislative history does provide some support for the interpretation's reasonableness, and to that we now briefly advert.
 
 
 25
 There is some indication from the legislative history that in adopting the 1977 amendments to the Food Stamp Act, Congress implicitly approved the USDA's construction of the "income" regulations. In discussing the treatment of public assistance payments, the House Agriculture Committee made it clear that it was aware that delayed public assistance payments received by "new public assistance households" were being counted as "income" under the USDA's interpretation of the regulations. (1977) U.S.Code Cong. & Ad.News, at 2050. Moreover, the Committee expressed its view that "(p)ayments received from federally aided public assistance programs based on need (should be) included in income by the Department ..., absent any specific exclusions in the law establishing the assistance payment itself." Id. at 2003.
 
 
 26
 Countering this implication from the legislative history, plaintiffs only point to the specific exclusion in the Committee Bill for nonrecurring lump-sum payments. Id. at 2001. This begs the question because the specific statutory exclusion referred to is nothing more than a restatement of the regulation that the Secretary had interpreted not to cover delayed AFDC payments. While Congress' discussion of the USDA's interpretation is not so explicit and unequivocal that this court should feel bound by congressional approval of that interpretation, compare United States v. Board of Commissioners, 435 U.S. 110, 98 S.Ct. 965, 55 L.Ed.2d 148 (1978), the failure of Congress to repeal or revise the USDA's interpretation is at least persuasive evidence that that interpretation is the one intended by Congress, see, e. g., Lorillard v. Pons, 434 U.S. 575, 98 S.Ct. 866, 55 L.Ed.2d 40 (1978).
 
 
 27
 On the whole, we conclude that the plaintiffs have not made the requisite showing that the USDA's interpretation of its regulations is plainly erroneous. In consequence, it passes muster under this standard of judicial review.
 
 B.
 
 28
 Plaintiffs next contend, however, that, even if the USDA's interpretation of § 271.3(c)(1) is not plainly erroneous, the instructions and letters that the USDA relies on in making that interpretation cannot be considered because they have not been promulgated in accordance with the APA. See 5 U.S.C. § 553. Anderson v. Butz, 550 F.2d 459 (9th Cir. 1977) is cited in support of this proposition. Anderson is inapposite, however, because the court there dealt with the distinctly different requirements for publication under the Freedom of Information Act (FOIA) portion of the APA. 5 U.S.C. § 552(a)(1)(D).
 
 
 29
 After noting the dearth of guidance on whether interpretive rules must be published under the FOIA, the Anderson court adopted the test fashioned by the court in Lewis v. Weinberger, 415 F.Supp. 652, 659 (D.N.M.1976), that an administrative interpretation need not be published under the FOIA if "(1) only a clarification or explanation of existing laws or regulations is expressed; and (2) no significant impact upon any segment of the public results." Anderson v. Butz, 550 F.2d at 462-63. Since the USDA instruction under consideration in Anderson did have a significant impact on food stamp recipients, the Ninth Circuit held that the instruction could not be applied because it had not been published in accordance with the FOIA. Because the USDA instructions and letters in the present case had an equally significant impact on food stamp recipients, it is clear that those instructions and letters could not be relied upon if the reasoning of Anderson and Lewis were applicable.
 
 
 30
 In the present case, however, the instructions and letters have allegedly been relied upon in violation of the general APA promulgation provision, which provides that the notice requirements of the APA do not apply "to interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice," 5 U.S.C. § 553(b)(A), and that "interpretative rules and statements of policy" are exempt from APA publication requirements, id. § 553(d)(2). In consequence the relevant inquiry is whether the USDA instructions and letters should be regarded as "substantive rules," which "create law, usually implementary to an existing law," or "interpretative rules," which "are statements as to what the administrative officer thinks the statute or regulation means." Gibson Wine Co. v. Snyder, 194 F.2d 329, 331 (D.C.Cir.1952). An interpretative rule effectuates no change in policy or law and merely explains or clarifies existing law or regulations. Gosman v. United States, 573 F.2d 31, 39 (Ct.Cl.1978); Springs Mills, Inc. v. Consumer Product Safety Commission, 434 F.Supp. 416, 430 (D.S.C.1977).
 
 
 31
 Assuming that the USDA's interpretation of section 271.3(c)(1) is not plainly erroneous, there is no question that the instructions from the Food Stamp Certification Handbook and the letters based on those instructions merely explain or clarify section 271.3(c)(1). Plaintiffs point, however, to two cases in which district courts have found that even USDA interpretative rules, if they are of "general applicability," must be promulgated and published in accordance with the APA. See Carter v. Blum, 493 F.Supp. 368, 372 (S.D.N.Y.1980); Dean v. Butz, 428 F.Supp. at 480. Because the courts in these cases relied solely on Anderson and Lewis, which address only the FOIA requirements, we respectfully decline to adopt their reasoning. The better view is the one taken by this circuit in Fairfax Nursing Center, Inc. v. Califano, 590 F.2d at 1301, that an agency's interpretation of its own regulations "need not have been promulgated in accordance with the standard notice and comment procedure."
 
 C.
 
 32
 Plaintiffs' final position is that section 271.3(c)(1), as interpreted by the USDA, violates their right to equal protection by unjustifiably according different treatment to a class composed of recipients of delayed AFDC payments than that given to recipients of other similar nonrecurring lump-sum payments. Since there is no question that the USDA's interpretation creates a separate classification for recipients of delayed AFDC payments, the relevant inquiry is whether that classification is rationally related to a legitimate governmental interest. See, e. g., Dep't of Agriculture v. Moreno, 413 U.S. 528, 533, 93 S.Ct. 2821, 2825, 37 L.Ed.2d 782 (1973).[5]
 
 
 33
 In support of the classification's reasonableness, the USDA contends that, because the AFDC and Food Stamp programs are generally administered by the same state agency, delayed AFDC payments can easily be anticipated by administrative personnel and thus do not create the administrative problems encountered in attempting to anticipate other nonrecurring lump-sum payments. This justification is not an intrinsically unreasonable one, and the Supreme Court has stated that "(a) discrimination will not be set aside if any state of facts reasonably may be conceived to justify it." McGowan v. Maryland, 366 U.S. 420, 426, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961). Plaintiffs challenge the justification's premise with evidence that the delayed AFDC payment of plaintiff Allen was not accurately anticipated in the present case. The USDA's justification, however, goes to the generality of cases, and is not rebutted by a single example.[6] We conclude that the USDA's interpretation of section 271.3(c)(1) withstands plaintiffs' equal protection challenge.
 
 
 34
 AFFIRMED.
 
 MURNAGHAN, Circuit Judge, dissenting:
 
 35
 The majority has held that the interpretation by the Department of Agriculture (USDA) of regulations adopted pursuant to the Food Stamp Act of 1964, as amended, is not plainly erroneous and thus is controlling. I dissent.
 
 
 36
 The USDA's interpretation of its regulations issued pursuant to that Act is patently unreasonable and inconsistent with the regulations themselves. Consequently it should not be upheld. As the law existed at the time the events which form the basis of this suit took place, 7 U.S.C. § 2011 was a Congressional declaration of policy, § 2012 defined various terms, and § 2013 provided, in part,
 
 
 37
 (a) The Secretary is authorized to formulate and administer a food stamp program under which, at the request of the State agency, eligible households within the State shall be provided with an opportunity to obtain a nutritionally adequate diet through the issuance to them of a coupon allotment which shall have a greater monetary value than the charge to be paid for such allotment by eligible households....
 
 
 38
 ....
 
 
 39
 (c) The Secretary shall issue such regulations, not inconsistent with this chapter, as he deems necessary or appropriate for the effective and efficient administration of the food stamp program.
 
 
 40
 Section 2014 provided, in part,
 
 
 41
 (a) Except for the temporary participation of households that are victims of a disaster as provided in subsection (b) of this section, participation in the food stamp program shall be limited to those households whose income and other financial resources are determined to be substantial limiting factors in permitting them to purchase a nutritionally adequate diet.
 
 
 42
 (b) The Secretary, in consultation with the Secretary of Health, Education, and Welfare, shall establish uniform national standards of eligibility for participation by households in the food stamp program.... The standards established by the Secretary, at a minimum, shall prescribe the amounts of household income and other financial resources, including both liquid and nonliquid assets, to be used as criteria of eligibility....
 
 
 43
 The remainder of § 2014 required certain specific inclusions or exclusions, not here relevant, in the Secretary's regulations. The remainder of the chapter contained provisions concerning coupons, the retail stores where they were to be used, and the administration of the program. None of those sections is pertinent here.
 
 
 44
 Pursuant to §§ 2013 and 2014 the Secretary issued regulations defining income and "financial resources" and setting limits on each for purposes of determining eligibility to participate in the food stamp program. The key regulations are as follows:
 
 
 45
 (1) Definition of income. (i) Monthly income means all income which is received or anticipated to be received during the month. To compute maximum monthly income for purposes of determining eligibility, income shall mean any of the following but is not limited to:
 
 
 46
 ....
 
 
 47
 (f) Payments received from federally aided public assistance programs, general assistance programs, or other assistance programs based on need;
 
 
 48
 ....
 
 
 49
 (ii) The following shall not be considered income to the household (this list is inclusive and no other exclusions from income shall be allowed):
 
 
 50
 ....
 
 
 51
 (e) Monies received from insurance settlements, sale of property (except for property related to self-employment provided for in subdivision (c)(1)(i)(b) of this section), cash prizes, awards, and gifts, inheritances, retroactive lump-sum Social Security or Railroad Retirement pension payments, income tax refunds and similar nonrecurring lump-sum payments.
 
 
 52
 7 C.F.R. §§ 271.3(c)(1)(i)(f) and 271.3(c)(1)(ii)(e) (emphasis added).
 
 
 53
 USDA, by an instruction manual and by letters to its various regional offices interpreted the regulations to mean that all AFDC payments, whether recurring monthly payments or retroactive, nonrecurring lump-sum payments, were to be counted as "(p)ayments received from federally aided public assistance programs" and therefore income under 7 C.F.R. § 271.3(c)(1)(i)(f) and that retroactive AFDC lump-sum payments would not be excluded as "similar nonrecurring lump-sum payments" under 7 C.F.R. § 271.3(c)(1)(ii)(e).
 
 
 54
 The interpretation is plainly unreasonable. The Secretary, concurrently with the foregoing interpretation as to AFDC benefits, interpreted the same regulations to exclude retroactive lump-sum Supplemental Security Income (SSI) benefits from income. Both SSI and AFDC are public assistance programs,[1] make payments to indigents, and normally pay recurring monthly benefits but sometimes, due to bureaucratic delays, pay retroactive lump-sum benefits. If SSI nonrecurring lump-sum payments are "similar" to the examples (especially gifts, inheritances, and income tax refunds) listed in the regulation and therefore excluded from income, then AFDC nonrecurring lump-sum payments are "similar" to the examples listed in the regulation and should be excluded from income.
 
 
 55
 The majority found the agency justified in according different treatment because of the consideration of convenience of administration inasmuch as an AFDC program and a food stamp program are generally operated by a single state agency. That fact, however, does not render AFDC "dissimilar." Any weight to that argument would require that the regulation have employed the word "identical." "Similar" means "like" but not "identical."
 
 
 56
 Failure to treat AFDC lump-sum payments like Social Security or Railroad Retirement pension payments, gifts, inheritances, or income tax refunds is either unreasonable-failing to acknowledge as "similar" that which obviously is similar-or inconsistent with the regulation-failing to exclude "similar nonrecurring lump-sum payments" from income despite a regulatory mandate for such treatment. In either instance, the interpretation is not controlling. Udall v. Tallman, 380 U.S. 1, 16, 18, 85 S.Ct. 792, 801-802, 13 L.Ed.2d 616 (1965) (An interpretation by an agency of its own regulation deserves extreme deference, yet the deference ceases where the interpretation is unreasonable); Fairfax Nursing Center, Inc. v. Califano, 590 F.2d 1297, 1301 (4th Cir. 1979) ("An agency's interpretation of its own regulations should be accepted by the courts unless it is shown to be unreasonable or inconsistent with statutory authority.").
 
 
 57
 The unreasonableness of defendants' interpretation of the regulation is exemplified by its application in this case. Defendants state in their brief that
 
 
 58
 By employing defendants' method of certification, plaintiff had previously been able to receive maximum food stamp benefits at no cost during those months when the least income had been available to her. Only after actually receiving $447.12 in AFDC benefits in June was she required to make any payment for food stamps.
 
 
 59
 (Emphasis in original.) The implication is that, had plaintiff Allen received her AFDC benefits each month, she would have been required to pay for food stamps in those months and that it was therefore equitable that more be charged for food stamps in the one month in which the retroactive payment was received.
 
 
 60
 However, plaintiffs alleged in their complaint, and defendants admitted in their answer, that
 
 
 61
 Plaintiff Allen's purchase price for food stamps for the month of June was calculated to be Seventy-two ($72) Dollars for Ninety-two ($92) Dollars worth of food stamp coupons. Had the retroactive lump-sum AFDC payment not been considered income, Plaintiff's purchase price for June would have been Zero ($0) Dollars for Ninety-two ($92) Dollars worth of food stamp coupons.
 
 
 62
 ....
 
 
 63
 (Plaintiffs Myers') household was required to pay Fifty-two ($52) Dollars for One Hundred Thirty-four ($134) Dollars worth of food stamp coupons. Had the retroactive lump-sum AFDC payment not been included as income, Plaintiffs' purchase price for October would have been Twenty-one ($21) Dollars for One Hundred Thirty-four ($134) Dollars worth of food stamp coupons.
 
 
 64
 That is, had plaintiff Allen received only her $74.52 recurring monthly benefit and not the pyramided $372.60 retroactive payment to cover delay not attributable to the plaintiff, she would have received her $92 worth of food stamps at no cost. Logically, had plaintiff Allen received $74.52 in each month during which her application was pending, her cost for $92 worth of food stamps in each month would likewise have been zero. Therefore, plaintiff Allen's cost for $92 worth of food stamps each month should have been zero whether, as was actually the case, she had no income or, as should have been the case, she had $74.52 per month in income. The implication of defendants' statement, that it is in some way fair that Allen be charged more for food stamps in the month the retroactive payment arrived because in previous months she had not been charged at all, is, therefore, a distortion; Allen was obliged to pay $72 for food stamps that she would never have paid had the AFDC payments arrived punctually, periodically, and without delay.
 
 
 65
 Furthermore, it does not appear that the Myers plaintiffs received food stamps prior to the month in which their retroactive payment arrived. They did not, therefore, receive food stamps at a lower price during the month when no AFDC benefit arrived than they would have been required to pay had their AFDC payment arrived on time. Instead, in the month in which their retroactive payment arrived, they were charged $52 for food stamps whereas, had the retroactive payment arrived on time, they would have been charged only $21 for food stamps. Even if the Myers had bought food stamps in the previous month for no cost, logic implies that the cost would have been $21 in the earlier month had the AFDC payment arrived on time. The total cost for the two months then would have been $42 had each AFDC payment arrived on time. But because one payment was delayed, plaintiffs were charged $52, or $10 more than they would have been had the AFDC payments been made each month.
 
 
 66
 In each situation presented, exclusion of the retroactive lump-sum payment from income in the month received (i. e. the interpretation of the regulations contended for by plaintiffs) would have resulted in plaintiffs paying exactly the amount they should have paid if the monthly checks had arrived on time. Instead, because monthly checks were delayed through no fault of plaintiffs and because of the application of defendant's unreasonable interpretation of the regulations, plaintiffs suffered actual monetary detriment.
 
 
 67
 Not only is the interpretation of the regulations contended for by defendants unreasonable, it is, according to defendants' own argument, inconsistent with the regulations. In 1977 Congress amended the Food Stamp Act, effective October 1, 1977. Amended § 2014 provides, in part:
 
 
 68
 (a) Participation in the food stamp program shall be limited to those households whose incomes and other financial resources ... are determined to be a substantial limiting factor in permitting them to obtain a more nutritious diet....
 
 
 69
 (b) The Secretary shall establish uniform national standards of eligibility ... for participation by households in the food stamp program in accordance with the provisions of this section....
 
 
 70
 ....
 
 
 71
 (d) Household income for purposes of the food stamp program shall include all income from whatever source excluding only ... (8) moneys received in the form of nonrecurring lump-sum payments, including, but not limited to, income tax refunds, rebates, or credits, retroactive lump-sum social security or railroad retirement pension payments and retroactive lump-sum insurance settlements: Provided, That such payments shall be counted as resources, unless specifically excluded by other laws....
 
 
 72
 It can be readily seen that amended § 2014(d) follows closely the language of the old regulations. Certain items appear in both listings: insurance settlements (pre-1977 Regulations), expanded to retroactive lump-sum insurance settlements (1977 Act); retroactive lump-sum Social Security or Railroad Retirement pension payments (identical in both); and income tax refunds (pre-1977 Regulations), expanded to income tax refunds, rebates, or credits (1977 Act). Those are the only items set out in the 1977 Act. All other items which had been listed in the pre-1977 Regulations-sale of property, cash prizes, awards, gifts, inheritances, and similar nonrecurring lump-sum payments-are dropped from the 1977 Act. However, whereas the pre-1977 Regulations provided that no exclusions not appearing in the listing would be allowed, except "similar" items, the 1977 Act stated that all nonrecurring lump-sum payments should be excluded from income, including, but not limited to, the items specifically listed.
 
 
 73
 Pursuant to the Amended Act, the Secretary promulgated new regulations. 7 C.F.R. § 273.9(c) provides:
 
 
 74
 Income exclusions. Only the following items shall be excluded from household income and no other income shall be excluded:
 
 
 75
 ....
 
 
 76
 (8) Money received in the form of a nonrecurring lump-sum payment, including, but not limited to, income tax returns, rebates, or credits; retroactive lump-sum social security, SSI, public assistance, railroad retirement benefits, or other payments; lump-sum insurance settlements; or refunds of security deposits on rental property or utilities. These payments shall be counted as resources in the month received, in accordance with § 273.8(c) unless specifically excluded from consideration as a resource by other Federal laws.
 
 
 77
 The new regulations, therefore, added items not spelled out in the act, in particular retroactive lump-sum SSI and public assistance benefits.
 
 
 78
 Defendants argue that Congress, in enacting the Food Stamp Act of 1977, and using language very close to that appearing in USDA's then-existing regulations without substantially revising or disapproving that language, intended to adopt the Secretary's interpretation of the regulations under the old statute, and to confirm its correctness. The majority is persuaded by the argument.[2]
 
 
 79
 However, the terms of the new act leave no doubt that AFDC one-time pyramided payments are to be excluded from income. The status of such payments as nonrecurring lump-sum payments is not in question, and under the new act, all nonrecurring lump-sum payments should be excluded from income. If, as the majority accepts, the new act ratified the Secretary's regulations under the old statute, then it necessarily follows that Congress interpreted the Secretary's regulations to exclude AFDC one-time payments from income.
 
 
 80
 Moreover, the majority's position leaves unexplained how the Secretary could, after the new act was passed, turn completely around and adopt new regulations which purport to interpret the new law, yet reach a result opposite to the one the Secretary has said Congress intended. The new regulations make clear that retroactive lump-sum AFDC payments are to be excluded from income and only recurring monthly payments are to be included. If this is, indeed, the meaning of the new law and, as defendants argue, the new law conformed to the old regulations, then the congressional purpose stands revealed as recognition that, under the old regulations, one time retroactive AFDC benefits were not "income." The contrary argument of the Secretary is skewed logically, for it says that a congressional purpose to adopt the meaning of an extant regulation, i. e. to harmonize old regulation and new law, compels a result under which the old regulation and the new law are completely at odds with one another. Properly construed, the new regulations do not contradict the old regulations; they merely clarify what may have appeared ambiguous. They establish that retroactive nonrecurring AFDC payments are not, and before 1977, under the regulations then in force, were not, income.
 
 
 81
 The new regulations do, however, evidently conflict with the USDA Food Stamp instruction manual interpreting the old regulations. Defendants argue that the instruction manual's interpretation of the old regulations was also adopted by Congress when it enacted the Food Stamp Act of 1977 using language substantially similar to that used in the old regulations themselves. In accepting the argument, this Court has, in effect, declared the new regulations invalid as being in conflict with the instruction manual's interpretation.[3] I prefer an interpretation which will uphold the validity of the new regulations. They are a reasonable interpretation of the 1977 Act and a clarification of the old regulations. As for any conflict with the instruction manual and letters to regional offices, published regulations certainly are entitled to greater weight as evidence of the Secretary's interpretation of particular language than are internal departmental communications.
 
 
 82
 Both the legislative history of the Food Stamp Act of 1977 and case law support plaintiffs' reasonable interpretation of the language in question-i. e., that monthly AFDC payments are to be counted as income but that retroactive lump-sum AFDC payments are to be excluded. The House Report does not quote the instructions on which defendants here rely so heavily; instead it quotes that portion of USDA's instructions which required exclusion of:
 
 
 83
 Nonrecurring lump sum payments such as ... retroactive Social Security and Railroad Retirement pension payments; ... and similar payments. Any of the above payments received in recurring rather than lump sum payments will count as income. Nonrecurring lump sum payments will be treated as a resource.
 
 
 84
 The report goes on to note that "(t)he list of such nonrecurring lump sum payments is intended to be open-ended." (1977) U.S.Code Cong. & Ad.News at 2013-14. The report states:The goal is to smooth the way for participation by the needy, not to place obstacles in their path by making them out to be less needy than they in fact are.
 
 
 85
 (1977) U.S.Code Cong. & Ad.News at 2055. Yet, in the instant case, plaintiff Allen alleged that, because defendants counted her lump-sum payment as income in the month received, she was treated as being able to afford to pay $72 for food stamps that month. When plaintiff in fact used all of the retroactive payment to pay off bills and late charges which had accumulated during the time she was waiting for AFDC benefits to begin, she was unable to pay the $72 for food stamps and therefore could not participate in the program in that month.
 
 
 86
 The only federal court which so far has been faced with a question under the applicable section of the old regulations upheld the distinction, argued for here by plaintiffs, between regular monthly public assistance payments and nonrecurring lump-sum payments. Dean v. Butz, 428 F.Supp. 477, 481 (D.Haw.1977). Defendants rely on a case decided by Florida's Fourth District Court of Appeals which involved exactly the question presented here and held simply by judicial ukase (per curiam affirmance without opinion) that retroactive lump-sum AFDC payments were to be included in income. Lewis v. State Department of Health and Rehabilitative Services, 366 So.2d 904 (Fla. 4th Dist.Ct.App.1979).[4] Defendants failed, however, to mention that Florida's Fifth District Court of Appeals was presented with the same question and held, in a later case, with published opinion, that retroactive lump-sum AFDC payments should be excluded from income as "similar nonrecurring lump-sum payments." Harrell v. State Department of Health and Rehabilitative Services, 376 So.2d 264 (Fla. 5th Dist.Ct.App.1979) (relying on new regulations as "Department of Agriculture's own statement" which "should be given great weight in determining the proper interpretation to be given to the provisions of 7 C.F.R. § 271.3(c)(1)(ii)(e);" the AFDC retroactive nonrecurring lump-sum AFDC payment was received in October 1977 "for benefits which should have been made under the AFDC program from January 1977;" concurring opinion specifically notes and declines to follow the Lewis result).
 
 
 87
 I agree with Florida's Fifth District Court of Appeals and with the District of Hawaii that nonrecurring lump-sum public assistance payments-specifically here, AFDC benefits-are excluded from income under both the old and new food stamp regulations.[5] I, therefore, dissent.
 
 
 
 [1]
 Plaintiffs' claim for injunctive and declaratory relief was effectively mooted by the USDA's modification of its regulations following passage of the Food Stamp Act of 1977 to specifically exclude from income retroactive lump-sum public assistance payments. See 7 C.F.R. § 273.9(c)(8) (1979). This modification, however, had no effect on the retroactive award of monetary relief, because in enacting the Food Stamp Act of 1977 Congress specifically provided that "(p)ending proceedings under the Food Stamp Act of 1964, as amended, shall not be abated by reason of any provision of the Food Stamp Act of 1977, but shall be disposed of pursuant to the applicable provisions of the Food Stamp Act of 1964, as amended, in effect prior to the effective date of the Food Stamp Act of 1977." Food Stamp Act of 1977, Pub.L. 95-113, § 1303(b)
 
 
 [2]
 Participation in the Food Stamp program is determined by household on the basis of the household's size and financial condition. Any assets a household has or receives are counted as either "resources" or "income," and for each of these categories there is a maximum amount that a household may have before being declared ineligible. The amount of "resources" is irrelevant as long as it is below the maximum; the amount of "income," however, is also used in computing the amount of the food stamp bonus on a sliding scale
 
 
 [3]
 The USDA cites to its 1978 alteration of its regulations to explicitly exclude delayed AFDC payments from "income," 7 C.F.R. § 273.9(c)(8) (1979), as a strong indication that the regulation under consideration in this case, which contained no specific mention of delayed AFDC payments, was not intended to include them within the exclusions from income. See Federal Insurance Co. v. Speight, 220 F.Supp. 90 (E.D.S.C.1963). The court in Speight, however, relied on the plain meaning of the former law to support the court's conclusion that the later amendment substantially altered the state's definition of uninsured motorist. Id. at 95. In the present case, on the other hand, the meaning of 7 C.F.R. § 271.3(c)(1)(ii)(e) is far more ambiguous. For this reason, we would assign little if any weight to USDA's alteration of its regulations on the treatment of delayed AFDC payments as support for its interpretation of the previous regulation
 
 
 [4]
 The USDA relies upon the canon of statutory construction that "(g)eneral language of a statutory provision, although broad enough to include it, will not be held to apply to a matter specifically dealt with in another part of the same enactment." D. Ginsberg & Sons, Inc. v. Popkin, 285 U.S. 204, 208, 52 S.Ct. 322, 323, 76 L.Ed. 704 (1932). The USDA contends that the generalized exclusion from income of nonrecurring lump-sum payments does not apply to delayed AFDC payments because those payments are specifically included in income as payments received from federally aided public assistance. Plaintiffs, on the other hand, argue that it is the more specific exclusion of § 271.3(c)(1)(ii)(e) that controls over the general inclusion of § 271.3(c)(1) (i)(f). We find the opposing contentions on this point simply inconclusive
 
 
 [5]
 We cannot accept the USDA's position that consideration of this constitutional claim is flatly foreclosed by the Supreme Court's approval of a USDA regulation including transportation subsidies in income on the ground that, "(s)ince there is no question about the constitutionality of the statute itself, the implementation of the statutory purpose provides a sufficient justification for both the federal regulations and the parallel state regulations to avoid any violation of equal protection guarantees." Knebel v. Hein, 429 U.S. 288, 296-97, 97 S.Ct. 549, 554-555, 50 L.Ed.2d 485 (1977); accord, Harrelson v. Butz, 547 F.2d 915, 916 (4th Cir. 1977) (upholding validity of regulation including educational grants in income in partial reliance on Knebel ). This contention must fail because both the Supreme Court in Knebel and this court in Harrelson ultimately found the regulations under consideration to be constitutional not because the statute under which they were promulgated was constitutional but because they had a reasonable basis. Knebel v. Hein, 429 U.S. at 294-97, 97 S.Ct. at 553-555; Harrelson v. Butz, 547 F.2d at 916. While Knebel and Harrelson may bolster the USDA's case, an independent inquiry into whether the challenged classification is reasonably justified by a legitimate governmental interest is nevertheless compelled
 
 
 [6]
 At least one court has found that personnel administering the Food Stamp program are able accurately to anticipate delayed AFDC payments. Lewis v. State Dept. of Health & Rehabilitative Services, 366 So.2d 904 (Fla.Ct.App.1979)
 
 
 [1]
 See 7 C.F.R. § 273.9(b)(2)(i) (1980):
 (2) Unearned income shall include, but not be limited to:
 (i) Assistance payments from Federal or federally aided public assistance programs, such as supplemental security income (SSI) or aid to families with dependent children (AFDC) ....
 
 
 [2]
 See p. 1006:
 There is some indication from the legislative history that in adopting the 1977 amendments to the Food Stamp Act, Congress implicitly approved the USDA's construction of the "income" regulations....
 Countering this implication from the legislative history, plaintiffs only point to the specific exclusion in the Committee Bill for nonrecurring lump-sum payments.... This begs the question because the specific statutory exclusion referred to is nothing more than a restatement of the regulation that the Secretary had interpreted not to cover delayed AFDC payments. While Congress' discussion of the USDA's interpretation is not so explicit and unequivocal that this court should feel bound by congressional approval of that interpretation, compare United States v. Board of Commissioners, 435 U.S. 110 (98 S.Ct. 965, 55 L.Ed.2d 148) (1978), the failure of Congress to repeal or revise the USDA's interpretation is at least persuasive evidence that that interpretation is the one intended by Congress, see, e. g., Lorillard v. Pons, 434 U.S. 575 (98 S.Ct. 866, 55 L.Ed.2d 40) (1978).
 
 
 [3]
 That poses the frightening possibility of a general return to the practice, eliminated by the currently applied regulations, of reducing eligibility for food stamps by reason of retroactive lump-sum AFDC payments. Hardship for the needy will be a regrettable consequence
 Regardless of the scope of administrative powers to regulate, and to clarify ambiguities in a statute, where Congress has spoken unambiguously to say that the new law and the old regulation compel the same result, the Secretary is not free to write a regulation forcing them to reach opposite results.
 
 
 [4]
 The Secretary places great reliance on the final order of the Florida administrative hearings officer. He neglects in his Brief to point out that the affirmance was per curiam, without any opinion
 
 
 [5]
 Because I would hold that the Food Stamp instruction manual is an unreasonable and inconsistent interpretation of the old food stamp regulations I need not reach the question of the propriety of its method of promulgation. Because I would find for plaintiffs on statutory interpretation grounds, I do not, of course, reach their contention based on the Constitution