**Sonja BIGGS, et al., Plaintiffs,**

v.

**John R. BLOCK, Secretary, etc., et al., Defendants.**

**No. CV 84–5006.**

United States District Court,
E.D. New York.

March 20, 1986.

Leonard S. Clark, Nassau/Suffolk Law Services Committee, Inc. by John F. Castellano, Hempstead, N.Y., for plaintiffs.

Raymond J. Dearie, U.S. Atty. by Deborah Zwany, Asst. U.S. Atty., Brooklyn, N.Y., for defendant Block.

Edward G. McCabe, Nassau Co. Atty. by Carnell Foskey, Mineola, N.Y., for defendant D'Elia.

Robert Abrams, N.Y. State Atty. Gen. by Shirley Bedor Ortego, Mineola, N.Y., for defendant Perales.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

This action arises out of allegedly improper categorization of Home Relief benefits for purposes of calculating Food Stamp entitlements. Plaintiffs, who received Home Relief benefits prior to being declared eligible for Supplemental Security Income ("SSI") payments, assert that the inclusion of Home Relief benefits as countable income in determinations of Food Stamp eligibility is violative of the Food Stamp Act, 7 U.S.C. § 2011 *et seq.*, and regulations promulgated thereunder, 7 C.F.R. § 271 *et seq.*, the Civil Rights Act of 1871, 42 U.S.C. § 1983, and the equal protection guarantees of the Fifth and Fourteenth Amendments. In an attempt to rectify the purportedly unlawful treatment of Home Relief benefits, plaintiffs have filed this class action against John R. Block, Secretary of the United States Department of Agriculture ("USDA"), Cesar Perales, Commissioner of the New York State Department of Social Services ("State DSS"), and Joseph A. D'Elia, Commissioner of the Nassau County Department of Social Services ("Nassau DSS").

The State DSS has moved for an order dismissing plaintiffs' claims. The State DSS argues that plaintiffs lack standing to pursue declaratory and prospective injunctive relief and that the Eleventh Amendment bars their claim for retroactive relief against the State.

### I.

### A.

The Food Stamp program, which is designed to alleviate hunger and malnutrition among low income households, is governed by the Food Stamp Act ("Act"), 7 U.S.C. § 2011 *et seq.* and regulations promulgated, under authority granted by the Act, 7 U.S.C. § 2013(c), by the Secretary of the USDA, 7 C.F.R. § 271 *et seq.* Participation in Food Stamp program is dependent upon an applicant's financial situation. To this end, the Act and its accompanying regulations set forth a myriad of requirements for eligibility. *See* 7 U.S.C. § 2014; 7 C.F.R. § 273. A crucial element in the determination of eligibility is the level of a household's income. 7 U.S.C. § 2014; 7 C.F.R. § 273.9. Not all money that becomes available to a Food Stamp applicant, however, is necessarily countable as income. For instance, all loans (except for educational loans on which repayment is deferred) are to be excluded in calculating the household's income for Food Stamp purposes. 7 U.S.C. § 2014(d)(4); 7 C.F.R. § 273.9(c)(4).

The overall Food Stamp program is administered by the Food and Nutrition Service of the Department of Agriculture. Each state which participates in the program must develop a plan for submission and approval by the Food and Nutrition Service. 7 U.S.C. § 2020. Each state's plan is implemented and administered by an appropriate state agency. The federal government, through the USDA, finances 100% of Food Stamp benefits and 50% of the administrative costs associated with participating states' programs. The remaining 50% of administrative expenses is the individual state's responsibility. 7 U.S.C. §§ 2013, 2025, 2027.

Under New York's Food Stamp Plan, defendant Perales, as Commissioner of the State DSS, is responsible for the administration of the Food Stamp program in New York. N.Y.Soc.Serv.L. §§ 17, 20, 34, 95. New York administers its Food Stamp program through local social services districts.[1] In order for each local district to participate in the Food Stamp program, the local commissioner is required to submit to the State DSS a local plan that accords with federal and state requirements. Defendant D'Elia, in his capacity as Commissioner of the Nassau DSS, is responsible for the administration of the Food Stamp program within Nassau County. N.Y.Soc. Serv.L. §§ 65, 95.

### B.

Home Relief is a state public assistance program. Home Relief is available, subject to certain limitations, to "[a]ny person unable to provide for himself, or who is unable to secure support from a legally responsible relative, who is not receiving needed assistance or care under [other state public assistance programs], or from other sources." N.Y.Soc.Serv.L. § 158(a). Perales, as State Commissioner, is responsible for the administration of all Home Relief in New York. N.Y.Soc.Serv.L. §§ 17, 20, 34. D'Elia, as Nassau County Commissioner, is responsible for administration of the Home Relief program in Nassau County. N.Y.Soc.Serv.L. § 62.

As a condition for receipt of Home Relief benefits, an applicant who reasonably appears to meet the criteria for federal SSI payments, 42 U.S.C. §§ 1381a–1382; 20 C.F.R. § 416, is required to apply for SSI. N.Y.Soc.Serv.L. § 158(a), 18 N.Y.C.R.R. § 370.7(b). If the applicant qualifies for Home Relief, Home Relief benefits will be paid until federal SSI payments begin to be received. N.Y.Soc.Serv.L. § 138–a. As a further condition for Home Relief Eligibility, the applicant must sign a written authorization form[2] allowing the Secretary of

the United States Department of Health and Human Services ("HHS") to send any retroactive SSI payment to the local Department of Social Services in order for the local department to deduct the amount of any Home Relief it had paid the applicant during the period for which the applicant has been retroactively covered by SSI. 42 U.S.C. § 1383(g)(1); 20 C.F.R. § 416.1902; N.Y.Soc.Serv.L. § 158(a); 18 N.Y.C.R.R. § 370.7. State regulations define this amount of recoverable Home Relief as "interim assistance." 18 N.Y.C.R.R. § 370.-7(a)(1). After deducting the amount of Home Relief paid, the local department must remit to the individual the outstanding balance with a written accounting of its calculations. 20 C.F.R. § 416.1910(b).

### II.

Plaintiffs in this action are SSI recipients who, pursuant to the statutory and regulatory scheme outlined above, received Home Relief benefits while awaiting a determination of their eligibility for SSI. After determining that each of the named plaintiffs had established his or her SSI eligibility, the HHS Secretary forwarded individual retroactive checks to the Nassau DSS where, in turn, part or all of the amount of Home Relief benefits paid to the individual plaintiffs was deducted and the balance remitted to each plaintiff.

During the period in which the plaintiffs received Home Relief benefits, they also obtained Food Stamps from the Nassau DSS. The number of Food Stamps awarded each plaintiff was based upon calculations which included Home Relief benefits as countable income for his or her Food Stamp household.

Plaintiffs allege that the inclusion of Home Relief benefits as countable income was improper and resulted in underpayment of Food Stamps to which they were entitled. They argue that, because the lo-

---

**1.** Each county within the state constitutes a single district, with the exception of the counties that comprise the City of New York, which are designated a single social service district. N.Y. Soc.Serv.L. § 61.

**2.** Form DSS 2424, "Repayment of Interim Authorization."

cal and state departments of social services later recover from retroactive SSI checks the amount of interim Home Relief benefits paid, such benefits constitute loans, which are excludable from household income for Food Stamps purposes under 7 U.S.C. § 2014(d)(4) and 7 C.F.R. § 273.-9(c)(4). The essence of plaintiffs' claim is that defendants' continuing practice and policy of treating Home Relief benefits as income in determinations of Food Stamp payments, while excluding all other loan proceeds from countable income (except for the educational loans specifically noted in § 2014(d)(4)), violates federal statutory law and regulations, as well as constitutional guarantees of equal protection.

The individual named plaintiffs seek to maintain the lawsuit as a class action, pursuant to Fed.R.Civ.P. 23, on behalf of all Food Stamp recipients in New York who have been found eligible for SSI and had received Home Relief benefits prior to the establishment of their SSI eligibility, and whose Food Stamp entitlement during their receipt of Home Relief had been calculated by including their Home Relief as countable income for Food Stamp purposes.[3] Plaintiffs seek as relief: (1) declarations that the defendants' practice and policy violates federal statutory and constitutional law; (2) injunctions prohibiting the continued inclusion of Home Relief payments as countable income and ordering State Commissioner Perales to direct local commissioners to change their policy; (3) injunctions ordering Nassau County Commissioner D'Elia to restore lost Food Stamp benefits to the class and instructing Perales to direct local commissioners in the state to do the same and report back to him concerning their department's compliance within a reasonable time after entry of judgment; and (4) costs, disbursements, and attorneys fees under 42 U.S.C. § 1988.

## III.

The power of federal courts to adjudicate disputes is by no means unlimited. One restriction on jurisdiction is the threshold requirement, imposed by Article III of the United States Constitution, that a party that seeks to have his case heard in federal court must allege an actual "case or controversy." U.S. CONST. art. III; *Flast v. Cohen*, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968). In suits against public entities or officials, allegations of abstract injury are insufficient to impart the necessary standing to sue. A plaintiff must show that he has sustained or is in immediate danger of sustaining some direct injury as a result of the challenged official conduct. The injury or threat of injury must be "real and immediate," not merely "conjectural" or "hypothetical." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101–02, 103 S.Ct. 1660, 1665, 75 L.Ed.2d 675 (1983).

Standing to sue may depend on the type of relief sought. A plaintiff who has alleged injury sufficient to entitle him to a hearing on the question of defendant's liability for damages has not necessarily also met the standard required to be heard on a claim for injunctive or declaratory relief. In *Lyons*, for instance, Lyons filed suit in federal court against the City of Los Angeles and certain of its police officers alleging that upon stopping him for a traffic violation, the officers, without provocation or justification, applied a "chokehold" that rendered him unconscious and damaged his larynx. In addition to a claim for damages, Lyons sought equitable relief consisting of an injunction against the use of chokeholds except in situations where the victim reasonably appeared to be threatening the use of deadly force, and a declaratory judgment holding that the use of chokeholds

---

**3.** This class definition is from ¶ 1 of Plaintiffs' First Amended Complaint. ¶ 17 of the Amended complaint defines the class somewhat differently:

> All past, present, and future Food Stamp recipients in New York State, who (1) have received or will receive Home Relief, and (2) have repaid, or will have repaid, pursuant to a Repayment of Interim Assistance Authoriza-

tion, state and local DSS part or all of the Home Relief benefits received by them for any month in which their household was eligible for Food Stamps.

As the question of class certification is not now before the Court, the Court need not address the potentially relevant discrepancies between these two class definitions.

absent the threat of immediate use of deadly force is a per se violation of various constitutional rights.

The Supreme Court held that while an illegal choking presumably afforded Lyons standing to claim damages, he had failed to establish the existence of a case or controversy that would confer standing to seek injunctive and declaratory relief. Lyons' standing to seek such relief depended on whether he was likely to suffer future injury from the police's use of chokeholds. Lyons had not shown that there was a "real and immediate threat" that he would again be subjected to an illegal chokehold. 461 U.S. at 105, 103 S.Ct. at 1667. "Absent a sufficient likelihood that he will again be wronged in a similar way, Lyons is no more entitled to an injunction than any other citizen of Los Angeles; and a federal court may not entertain a claim by any or all citizens who no more than assert that certain practices of law enforcement officers are unconstitutional." 461 U.S. at 111, 103 S.Ct. at 1670.

The relief requested in the case pending before this Court includes a declaratory judgment and prospective injunctions. The State DSS argues that plaintiffs lack standing to pursue such equitable relief. The State notes that all the named plaintiffs have been found eligible for SSI and thus no longer receive interim Home Relief benefits. The granting of the prospective relief which plaintiffs seek would therefore have no direct effect on them. Plaintiffs, the State concludes, lack the sufficient stake in obtaining the equitable relief sought necessary to bestow standing to assert a right to such relief.

 Plaintiffs attempt to rebut Perales' arguments on two basic grounds. First, they assert that they will in fact benefit from the granting of declaratory and injunctive relief directing a change in Food Stamp policy in the event that they have to reapply for public assistance pending another SSI eligibility determination.

Such a conjectural possibility is insufficient to grant standing. Plaintiffs have failed to establish in any manner that there is a "real and immediate" possibility that any of them will need to reapply for Home Relief benefits. Plaintiffs have not indicated any factors which differentiate them from other citizens of the State of New York who might conceivably need Home Relief at some point in the future. Furthermore, the fact that plaintiffs may have suffered harm as a result of miscalculation of their eligibility for Food Stamps while receiving Home Relief benefits does not entitle plaintiffs to seek prospective equitable relief absent the requisite showing of a real and immediate threat of future injury. While past wrongs are evidence bearing on whether such a threat of injury exists, past harm does not in and of itself amount to the real and immediate threat of injury necessary to make out a case of controversy. Lyons, 461 U.S. 93, 103 S.Ct. 1660; Rizzo v. Goode, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976); O'Shea v. Littleton, 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974).

 Second, plaintiffs argue that their standing to sue for equitable relief is supported by an alleged lack of divergence of interests between themselves and other purported class members. Such a commonality of interests, however, cannot create standing where it otherwise does not exist. Plaintiffs have confused the requirements of standing with that of class certification under Rule 23.[4]

Plaintiffs, therefore, have not demonstrated that they have standing to seek the declaratory and prospective injunctive relief they have asked the Court to order. Accordingly, plaintiffs' claims for such relief are dismissed.

## IV.

Plaintiffs seek, in addition to the prospective relief discussed, relief that is essential-

---

**4.** Plaintiffs' confusion is illustrated by their citation of *Morabito v. Blum*, 528 F.Supp. 252 (S.D. N.Y.1981), as support for their proposition. Although *Morabito* did address the issue of stand-

ing, it was in the context of class certification that Judge Ward discussed the question of the commonality of interests between class representatives and other class members.

ly retroactive in focus, namely, an injunction ordering D'Elia to restore lost Food Stamp benefits to plaintiffs and class members under his jurisdiction and an injunction ordering Perales to direct each local commissioner to do the same within his or her respective jurisdiction.[5] The State DSS argues that, under the Eleventh Amendment, such relief cannot be ordered by a federal court.

The Eleventh Amendment states, "The Judicial Power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI. The United States Supreme Court has expanded the scope of the literal language of the Amendment so as to bar not only suits brought against a state by citizens of other states, but also suits brought by a state's own citizens. *E.g., Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 1347 (1974); *Employees v. Department of Public Health and Welfare,* 411 U.S. 279, 93 S.Ct. 1614, 36 L.Ed.2d 251 (1973); *Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890).

When an action is brought not against the state in its own name, but against a state official, the question arises as to whether the Eleventh Amendment prohibition applies. In confronting this issue, the Supreme Court has made a basic distinction between suits for prospective injunctive relief, which the court has held are not barred by the Amendment, *see, e.g., Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), and suits for monetary awards out of state funds, which are barred, *see, e.g., Edelman,* 415 U.S. 651, 94 S.Ct. 1347. The line between those two categories is by no means always a bright one, as a prospective injunction may very well require a corresponding expenditure of state funds. The Court has held that where the relief requested, although re-

quiring an expenditure of state funds, is merely ancillary to a prospective injunction, it is not barred. *See, e.g., Quern v. Jordan,* 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979); *Hutto v. Finney,* 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978); *Milliken v. Bradley,* 433 U.S. 267, 97 S.Ct. 2749, 53 L.Ed.2d 745 (1977).

The State DSS argues that, under the principles of Eleventh Amendment jurisprudence, plaintiffs' claim for non-prospective relief is barred. Under the Food Stamp Act, the state will be responsible for 50% of the administrative costs associated with disbursing any retroactive benefits. 7 U.S.C. §§ 2013, 2025, 2027. The State asserts that New York's statutory responsibility for a percentage of the Food Stamp program's administrative expenses prevents any award of retroactive relief by the Court. As support for this proposition, the State relies primarily on *Edelman,* 415 U.S. 651, 94 S.Ct. 1347, and *Colbeth v. Wilson,* 554 F.Supp. 539 (D.Vt.1982), *aff'd,* 707 F.2d 57 (2d Cir.1983).

*Edelman* involved a class action against Illinois officials who administered the joint federal/state Aid to the Aged, Blind and Disbled ("AABD") programs. AABD was funded equally by the federal and state governments. The plaintiffs in *Edelman* claimed that state officials were violating federal law and denying equal protection of the laws by following state regulations that did not comply with federal time limits governing the period within which participating states had to process AABD applications. The district court awarded injunctive relief that included an order that state officials release and remit AABD benefits wrongfully withheld. The Court of Appeals affirmed. The Supreme Court reversed, holding that, insofar as the district court's decree ordered retroactive payment of benefits, the court's award afforded relief against the state that was barred by the Eleventh Amendment. The Supreme Court stated, "[A] federal court's remedial

5. The costs, disbursements, and fees plaintiffs seek pursuant to 42 U.S.C. § 1988 are not at issue in the motion before the Court.

power, consistent with the Eleventh Amendment, is necessarily limited to prospective injunctive relief, *Ex Parte Young* [209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714], and may not include a retroactive award which requires the payment of funds from the state treasury, *Ford Motor Co. v. Department of Treasury* [323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389]." 415 U.S. at 667, 94 S.Ct. at 1362.

In *Colbeth*, plaintiff brought a class action against the Commissioner of the Vermont Department of Social Welfare ("VDSW"). Plaintiff contended that the VDSW had mistakenly determined her eligibility for food stamps by including as countable income a figure representing her monthly Aid to Families with Dependent Children ("AFDC") grant under 42 U.S.C. §§ 601–615. Plaintiff argued that the inclusion of the full amount of the AFDC grant improperly failed to recognize an exclusion of the amount representing child care and transportation expenses by which the AFDC grant had been increased. The court held that the Eleventh Amendment barred plaintiff's request for retroactive relief:

> This court concludes that plaintiff's request for recalculation and restitution of food stamps benefits falls on the *Edelman*, rather than *Ex Parte Young*, side of the Eleventh Amendment law. Congress designed the Eleventh Amendment to " 'protect against federal judgments requiring payment of money that would interfere with the state's fiscal autonomy and thus its political sovereignty.' " . . . The characterization of the anticipated expense as "administrative" or "ancillary" cannot control where the effect of according relief is that against which the Eleventh Amendment militates.

554 F.Supp. at 545 (citations omitted).

*Edelman* and *Colbeth*, however, do not control the situation now before the Court. The retroactive relief which plaintiffs seek consists of two elements: (1) an order that D'Elia, the Nassau County Commissioner,

restore lost Food Stamp benefits; and (2) an order that State Commissioner Perales instruct the other local commissioners to do the same. Neither branch of the requested relief, it is important to note, requires the state to pay any money to the class members; rather they are directed against the local commissioners. The State Commissioner would be enjoined only so that statewide compliance by all local authorities could be achieved simultaneously rather than through piecemeal litigation.[6] The injunctions, in other words, touch upon state activities only indirectly.

■ Local governmental agencies do not enjoy the immunities from suit that the Eleventh Amendment confers upon states. The Supreme Court has consistently held throughout the years that the Eleventh Amendment limits jurisdiction only as to suits against states, not those against counties and other local government entities. *E.g., Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *Lincoln County v. Luning*, 133 U.S. 529, 10 S.Ct. 363, 33 L.Ed. 766 (1890); *see also Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (Eleventh Amendment does not bar § 1983 suits against municipalities and other local governmental entities).

■ New York administers its Food Stamp program through local agencies. Each county (plus the city of New York) has been designated a social services district which is responsible for public assistance programs within its jurisdiction. Each local commissioner establishes his or her local plan for the administration of programs within the county. The local commissioner is appointed by county governmental authorities such as a county board of supervisors or county executive and can be removed only through the actions of the appointing authority. N.Y.Soc. Serv.L. §§ 34, 65, 95, and 116. The local

---

**6.** If plaintiffs are ultimately successful in their claims against the federal government, such statewide compliance would probably be achieved even without such an injunction, as state, and thus local, policy would have to be altered so as to conform with the resulting modification of federal requirements. 7 U.S.C. § 2020; N.Y.Soc.Serv.L. § 95.

district, furthermore, is itself responsible for 50% of the administrative costs associated with public assistance and care to state and local charges. N.Y.Soc.Serv.L. § 153–e.

The case before the Court is closely analogous to *Harrington v. Blum*, 483 F.Supp. 1015 (S.D.N.Y.1979), *aff'd*, 639 F.2d 768 (2d Cir.1980). *Harrington* was a class action challenging New York City's procedures governing eligibility for expedited Food Stamp benefits. Plaintiffs named as defendants officials of both the State and City of New York. After holding that the procedures in question violated the controlling federal eligibility standards, the court turned to the question of whether the City could be ordered to provide the retroactive Food Stamp benefits plaintiffs sought. The court concluded that the Eleventh Amendment was inapplicable to such an award, and "[a]ccordingly, it is well within the power of this court to order the City defendants to arrange for the payment of retroactive food stamp benefits to those wrongfully denied benefits." 483 F.Supp. at 1021.[7]

The situations presented by both the instant case and *Harrington* contrast sharply with those presented by *Edelman* and *Colbeth*. *Edelman* and *Colbeth* were suits against state officials seeking direct payment of funds by the state. In neither case did plaintiffs seek relief from local officials or agencies. The plaintiffs in

*Edelman* sought to have state officials ordered to pay wrongfully withheld AABD benefits. The Vermont Food Stamp Program at issue in *Colbeth* was entirely state administered and did not employ local governmental entities to run the actual daily operations of the program.

The Eleventh Amendment, therefore, does not bar plaintiffs' request for retroactive relief.

V.

The named plaintiffs in this class action do not have standing to pursue the declaratory and prospective injunctive relief sought. Plaintiffs' claims for such relief are therefore dismissed.

The retroactive relief plaintiffs seek does not fall within the prohibition of the Eleventh Amendment. The State DSS's motion to dismiss plaintiffs' claim for such relief is therefore denied.

The State DSS shall file its answer within thirty (30) days after entry of this Order. In accordance with the Court's Order dated October 15, 1985, defendants shall file their responses to the class certification motion within twenty (20) days after entry of this Order.

SO ORDERED.

---

7. The court also stated that the state might well be included in an order for retroactive payments. The court reasoned that, since the state would be reimbursed by the federal government for any retroactive benefits paid to members of the class, the inclusion of the state in an order requiring retroactive payments would not result

in an impermissible imposition of a liability that must be paid out of public funds from the state treasury. The court did not discuss the possible relevance of potential administrative costs to the state.