**Sonja BIGGS, et al., Plaintiffs,**

**v.**

**Richard E. LYNG, Secretary, etc., et al., Defendants.**

**No. CV 84–5006.**

United States District Court, E.D. New York.

Oct. 1, 1986.

Leonard S. Clark, Nassau/Suffolk Law Services Committee, Inc. by John F. Castellano, Hempstead, N.Y., for plaintiffs.

Andrew J. Maloney, U.S. Atty. by Charles Knapp, Asst. U.S. Atty., Brooklyn, N.Y., for defendant Lyng.

Edward T. O'Brien, Nassau Co. Atty. by Carnell Foskey, Mineola, N.Y., for defendant D'Elia.

Robert Abrams, New York State Atty. Gen. by Shirley Bedor Ortego, Mineola, N.Y., for defendant Perales.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

Plaintiffs Sonja Biggs, Linda Braunstein, Peter De Respiris, Gaston Inman, Louis Jackson, Constance Scandola, and Janet Triant bring this action on behalf of themselves and all others similarly situated against Richard E. Lyng, Secretary of the United States Department of Agriculture ("USDA"), Cesar Perales, Commissioner of the New York State Department of Social Services ("State DSS"), and Joseph A. D'Elia, Commissioner of Nassau County Department of Social Services ("Nassau DSS"). Plaintiffs are Supplemental Security Income ("SSI") recipients who received Home Relief benefits while awaiting determination of their eligibility for SSI. Plaintiffs allege that defendants' policy of categorizing the Home Relief they received as countable income for purposes of calculating their entitlement to benefits under the Food Stamp Act, 7 U.S.C. § 2011 *et seq.*, violates the Act and regulations promulgated thereunder, 7 C.F.R. § 271 *et seq.*, the Civil Rights Act of 1871, 42 U.S.C. § 1983, and the equal protection under the law guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution.

Upon consideration of a motion by the State DSS to dismiss plaintiffs' complaint, this Court held that plaintiffs lacked standing to pursue certain declaratory and prospective injunctive relief they sought and dismissed plaintiffs' claims for such relief. The Court held, however, that plaintiffs' claims for retroactive relief were viable and fell outside the scope of that which is barred by the Eleventh Amendment to the United States Constitution. *Biggs v. Block*, 629 F.Supp. 1574 (E.D.N.Y.1986). Subsequently, the Court certified that the litigation could be maintained as a class action on behalf of members of a class consisting of:

> All persons who have received Food Stamp benefits in New York State since September 14, 1983, and who (1) have received Home Relief benefits; and (2) pursuant to a Repayment of Interim Assistance Authorization, have repaid State and local Departments of Social Services part or all of the Home Relief benefits received by them for any month in which their households were eligible for Food Stamps.

*Biggs v. Lyng*, No. CV 84–5006 (E.D.N.Y. June 23, 1986) [1] [Available on WESTLAW, DCTU database].

Plaintiffs now move, and defendants each cross-move, for summary judgment. As the material facts are not in dispute, the case is ripe for a final adjudication of the merits. Fed.R.Civ.P. 56.

### I.

The Court has already described at some length the interlocking federal and state statutory and regulatory schemes relevant to plaintiffs' claims, *Biggs*, 629 F.Supp. at 1575–77, but perhaps it might be useful to reiterate, at least in nutshell form, the relationship between the various provisions. Eligibility for the Food Stamp program, which is designed to alleviate hunger and malnutrition among low income households, 7 U.S.C. § 2011; *United States Department of Agriculture v. Moreno*, 413 U.S. 528, 93 S.Ct. 2821, 37 L.Ed.2d 782 (1973), depends in large part on the level of a household's income. 7 U.S.C. § 2014; 7 C.F.R. § 273.9. Not all monies that may become available to a Food Stamp applicant, however, are necessarily countable as income. The Food Stamp Act and its accompanying regulations establish, for instance, that all loans (except for educational loans on which repayment is deferred) are to be excluded in calculations of a household's income for purposes of Food Stamp eligibility. 7 U.S.C. § 2014(d)(4); 7 C.F.R. § 273.9(c)(4).

Administration of the Food Stamp program involves both federal and state participation. The federal government finances

---

**1.** The Court's June 23, 1986 decision also formally substituted Richard E. Lyng, who succeeded John R. Block as Secretary of the USDA during the pendency of this action, as a defendant.

100% of Food Stamp benefits and overall administration of the program is the responsibility of the Food and Nutrition Service of the USDA. Each state that participates in the program must submit a plan for approval by the USDA, but each state's plan is implemented and administered by an appropriate state agency and a state must pay 50% of administrative expenses associated with its plan. 7 U.S.C. §§ 2013, 2020, 2025, 2027. Under New York law, the State DSS is ultimately responsible for administration of the Food Stamp program within the state, but the program's actual administration on the local level is the responsibility of local social service districts, each of which must submit to the State DSS its own local plan that accords with federal and state requirements. N.Y.Soc. Serv.Law §§ 17, 20, 34, 65, 95.

Home Relief is a state public assistance program similarly administered statewide by the State DSS and locally by the local Departments of Social Services ("local DSS's"). N.Y.Soc.Serv.Law §§ 17, 20, 34, 62, 158(a). As one of the conditions for receiving Home Relief, applicants who appear to meet the requirements for federal SSI payments are required to apply for such federal benefits, which are designed to provide supplemental income to aged, blind, or disabled persons. 42 U.S.C. § 1381; N.Y.Soc.Serv.Law § 158(a); 18 N.Y.C.R.R. § 370.7(b). As an additional condition for receiving Home Relief, an applicant must sign a written authorization form allowing the Secretary of the United States Department of Health and Human Services ("HHS") to send to the local DSS any retroactive SSI payment that may be awarded to the applicant. Upon receipt of such payment, the local DSS will deduct the amount of any Home Relief it had paid the applicant during the period retroactively covered by SSI and forward the balance to the individual. This recoverable Home Relief is defined by the state to be "interim assistance," and eligibility for any Home Relief benefits ceases upon an individual's receipt of SSI payments from the federal government. 42 U.S.C. § 1383(g)(1); 20 C.F.R. §§ 416.1902,

1910(b); N.Y.Soc.Serv.Law §§ 138–a, 158(a); 18 N.Y.C.R.R. § 370.7.

Plaintiffs, as the Court has noted in its earlier opinions, are SSI recipients who, pursuant to the relevant federal and state provisions, obtained Home Relief while awaiting determinations of eligibility for SSI and were eventually found by HHS to be eligible for such federal benefits. HHS forwarded individual checks to the Nassau DSS upon determining each plaintiff's eligibility for SSI, whereupon the Nassau DSS recouped part or all of the amount of Home Relief benefits paid to the individual plaintiffs through deductions from the retroactive lump sum SSI payments.

During the period in which plaintiffs awaited decisions as to their eligibility for SSI, they not only received Home Relief through the operation of the state's public assistance program, but also obtained Food Stamps from the federal government. The Home Relief payments each plaintiff received were included as countable income in calculations of the level of entitlement of the plaintiff's household to Food Stamp benefits.

Plaintiffs allege that the inclusion of Home Relief as countable income for Food Stamp purposes resulted in underpayment of Food Stamp benefits to which they were rightfully entitled. Specifically, plaintiffs argue that defendants' failure to reclassify the interim assistance provided under the Home Relief program from countable income to excludable income upon the Nassau DSS's recovery of the monies provided to plaintiffs pending determination as to SSI eligibility violated the provisions of the Food Stamp Act and its accompanying regulations requiring that the proceeds of all loans (except educational loans upon which repayment has been deferred) be excluded from countable income. Plaintiffs further contend that defendants' policy unconstitutionally deprived the members of the class of equal protection of the laws in that all other loan proceeds (except for the educational loans specifically declared to be countable income in the statute and regulations) are categorized as excludable income.

## II.

§ 2014(d) of the Food Stamp Act, titled "Income excluded in computing household income," provides, in pertinent part, "Household income for purposes of the food stamp program shall include all income from whatever source excluding only .... (4) all loans other than educational loans on which repayment is deferred." 7 U.S.C. § 2014(d). The relevant regulation promulgated by the Secretary of the USDA similarly states, *"Income exclusions.* Only the following items shall be excluded from household income and no other income shall be excluded: .... (4) All loans, including loans from private individuals as well as commercial institutions, other than educational loans on which repayment is deferred." 7 C.F.R. § 273.9(c)(4).

§ 2014(d) and the USDA regulation have their roots in the 1977 amendments to the Food Stamp Act, which was originally enacted in 1964. As the Court noted above, *supra* § I, Congress established the Food Stamp program in an effort to reduce hunger and malnutrition among the nation's poor. In the mid–1970's, however, seemingly widespread concern about the rapid growth and cost of the Food Stamp program led Congress to undertake a comprehensive study designed to gain information as to the actual operation of the program, the nature of the participants in the program and their income levels, and the kinds and extent of administrative problems. 1977 U.S. Code Cong. & Admin. News 1704, 1978. After the completion of the study, Congress passed a number of amendments to the Food Stamp program designed to accomplish several major objectives, namely, (1) the tightening of administration of the program and the reduction of fraud and abuse; (2) the elimination of non-needy households from the program so that those who do not need Food Stamps do not get them; (3) the facilitation of the participation of the needy so that those who do need Food Stamps in fact receive them; (4) the keeping of costs close to the level then existing; (5) the simplification of administration; and (6) the minimization of any loss of benefits to currently needy participants. *Id.*

As part of its efforts to achieve these goals, Congress decided to inject into the Food Stamp Act a definition of the term "income," which up until that point the Act had been lacking. The regulations in force in 1977 tended either to define income tautologically (for example, "income means all income which ...") or all-inclusively (for instance, "all payments received by or made on behalf of household members"), or to rely upon lists of specific items that were deemed to constitute income. Congress determined that the best approach would be to combine the different methods the regulations employed. To this end, Congress established that household income for Food Stamp purposes is to include "all income from whatever source derived" with the sole exceptions to be the specific exclusions contained in the amended Act. *Id.* at 2001.

Congress' intent in amending the Act in this manner was "to cast the broadest possible net including all forms of what has been found to constitute income," and exclude only those items which the Act specifically declared to fall outside the reformulated Act's definition of income. *Id.* Congress consciously maintained the preexisting policy of considering all loans besides educational loans upon which repayment is deferred to be items excludable from countable income. *Id.* at 2012. Also, it should be noted that, as the legislative history underlying a subsequent, further amendment of the Food Stamp Act in 1980 indicates, under the system adopted in 1977, "assistance payments from Federal or federally aided public assistance programs or State or local benefit programs are considered to be fully includable income unless the law providing for the payments contains language that 'specifically excludes' those payments from consideration as income for the purpose of determining eligibility for the food stamp program." 1980 U.S. Code Cong. & Admin. News 843, 954.

### III.

The Court's decision in this litigation, therefore, must turn on the precise nature of the Home Relief benefits provided plaintiffs while they awaited a determination on their eligibility for SSI. Congress designed the Food Stamps program to combat the hunger and poor nutrition faced by the poor. Food Stamp benefits, however, are not made available indiscriminately. Eligibility is conditioned on conformance with various prerequisites and the amount of benefits to which a recipient may be entitled depends in large part upon the level of his household income. All money which a household receives is deemed "income" unless it stems from a source or is of a type specifically declared exempt under the Food Stamp Act and the USDA Secretary's regulations. Congress has expressed its will that a Food Stamp recipient's receipt of a "loan" (except for a certain form of educational loan) not stand in the way of his receipt of Food Stamp benefits to which he would otherwise be entitled. This Congressional intent is manifest in the relevant legislative history and has been codified both in the Food Stamp Act itself and the USDA Secretary's regulations. Accordingly, the court must closely scrutinize the nature of the "interim assistance" received by plaintiffs and later recouped by the Nassau DSS to determine whether Home Relief most properly should be classified as a loan excepted by the statute and regulations and thus specifically excluded from income.

As the Court has discussed above and in one of its earlier opinions in this action, *supra* § I; *Biggs*, 629 F.Supp. at 1576, the state, through the local DSS's, provides Home Relief to qualified applicants pending a decision by HHS regarding SSI eligibility. These interim assistance payments are ultimately recouped by the local DSS's by way of agreements, entered into with both the individual applicants and the federal government, allowing direct deductions from any retroactive SSI payments an applicant may later receive. Under the Home Relief program, in other words, individuals are able to obtain interim assistance provided they agree that their local DSS is entitled to the return of the sum granted them if they in fact receive the SSI benefits which they seek and authorize the local DSS to obtain this money directly from HHS.

The Court cannot help but conclude that, under these arrangements, interim assistance provided by the Home Relief program constitutes a "loan" as that word is generally understood. A loan, according to Webster's Third New International Dictionary 1326, is "money lent at interest," or "something lent for the borrower's temporary use on condition that it or its equivalent be returned." Legal authorities have defined the term to mean, "Anything furnished for temporary use to a person at his request, on condition that it shall be returned, or its equivalent in kind, with or without compensation for its use." *Liberty National Bank & Trust Co. v. Travelers Indemnity Co.*, 58 Misc.2d 443, 446, 295 N.Y.S.2d 983, 986 (Sup.Ct. Erie Co. 1968). *See also, e.g., Freeman v. Marine Midland Bank*, 510 F.Supp. 826, 830 (E.D. N.Y.1981), *affirmed*, 697 F.2d 290 (2d Cir. 1982) (loan is "an agreement pursuant to which one party transfers or delivers money or personal property to another in exchange for a promise to repay such property"); *Boerner v. Colwell Co.*, 21 Cal.3d 37, 41 n. 7, 145 Cal.Rptr. 380, 384 n. 7, 577 P.2d 200, 204 n. 7 (Cal.1978) ("a loan of money is a delivery of a sum of money to another under a contract to return at some future time an equivalent amount with or without an additional sum agreed upon for its use"); Black's Law Dictionary 844 (5th ed. 1979). Under New York's Home Relief program, the Nassau DSS furnished plaintiffs with interim assistance pending decisions on plaintiffs' SSI applications on condition that the money given them would be returned to the Nassau DSS upon receipt of any retroactive SSI payment. Furthermore, the Nassau DSS has actually recovered part or all of the Home Relief funds supplied to each plaintiff through deductions from the SSI checks HHS sent directly to the Nassau DSS. Construing the term loan as it is used in general parlance,

both non-legal and legal, the Court finds it difficult to see how these Home Relief payments could correctly be considered anything but loans.

Nothing in the Food Stamp Act, USDA regulations, or legislative history of the Act specifies or otherwise indicates that the use of the word loan in the statute and regulations denotes anything other than the term's usual meaning. Upon the Nassau DSS's recovery of the amount of interim assistance benefits paid out, the Home Relief obtained by each of the plaintiffs should have been reclassified as a loan and declared exempt from countable income under § 2014(d)(5) of the Food Stamp Act and § 273.9(c)(4) of the regulations, the Food Stamp entitlement during the period in which the Home Relief was received recalculated, and an award of retroactive Food Stamps made.

Although no reported cases appear to have considered the proper treatment of New York's Home Relief program under the Food Stamp Act, cases construing the nature of Home Relief and analogous interim assistance programs in place in other states are in accord with the Court's conclusion that Home Relief provided to applicants pending determinations of SSI eligibility fall into the category of loans excluded from income for Food Stamp purposes. In *Delmar v. Blum*, 53 N.Y.2d 105, 440 N.Y.S.2d 604, 423 N.E.2d 27 (N.Y.1981), the New York Court of Appeals addressed the relationship between Home Relief and the federal SSI program insofar as it concerned the State DSS policy of recouping interim assistance payments from retroactive SSI checks based upon calculations treating households containing two persons receiving public assistance as a single, two-person household rather than two separate discrete households. In the course of striking down the State DSS's practice, the Court of Appeals focused upon the purpose and nature of the Home Relief benefits available to those awaiting an HHS decision on their application for SSI. The court explicitly recognized that such interim assistance constitutes a loan to SSI applicants, stating:

The governing statute originally disqualified anyone *eligible* for SSI benefits from home relief benefits. However, it was recognized that this made no provision for SSI applicants during the period between the application for and the receipt of SSI benefits. Subdivision (a) of section 158 of the Social Services Law was, therefore, amended so that the home relief disqualification would not take effect until the applicant actually *received* the first SSI payment. The agency is then entitled to reimbursement for interim benefits provided and can deduct the appropriate amount from the first SSI payment. *In short, these interim benefits are in the nature of a loan,* or a substitute for SSI benefits, and the ordinary formulas by which public assistance is attributed to a recipient household do not readily apply. It is sophistry to divide a total award in half when *petitioner has been lent only the increment necessary to tide petitioner and her husband over until her SSI benefits arrive.*

440 N.Y.S.2d at 607, 423 N.E.2d at 30 (emphasis in last two sentences added).

New York's highest state court has thus itself declared Home Relief properly to be considered in the nature of a loan. Under the New York Court of Appeals' definitive reading of N.Y.Soc.Serv.Law § 158(a), the state provision establishing the relationship between the state Home Relief and federal SSI programs, there can be little question that § 158(a) offers needy residents of New York temporary state aid of a kind federal statute and regulation deem excluded from the definition of income under the Food Stamp program and contains language sufficient "specifically [to] exclude" interim Home Relief benefits from consideration as income for purposes of Food Stamp eligibility.

Other courts have similarly viewed reimbursable interim assistance benefits as loans when considering challenges to various aspects of federal or state public assistance programs. In *Moore v. Colautti,*

483 F.Supp. 357 (E.D.Pa.1979), *affirmed,* 633 F.2d 210, 211 (3d Cir.1980), for instance, Judge Green of the Eastern District of Pennsylvania confronted consolidated actions brought to invalidate and enjoin the policies and practices of the Pennsylvania Department of Public Welfare in obtaining reimbursement from individuals who received state administered public assistance pending awards of federal SSI benefits. As is the case in New York, Pennsylvania will supply interim assistance to an SSI applicant awaiting a determination of SSI eligibility on the condition that the applicant sign a reimbursement agreement. In discussing the nature of the assistance Pennsylvania makes available to its residents, Judge Green noted that the Pennsylvania Department of Public Welfare had itself persuaded the federal Social Security Administration to treat such reimbursable interim assistance as a loan for purposes of SSI eligibility. In *Tidwell v. Schweiker,* 677 F.2d 560, 567–68 (7th Cir.1982), *cert. denied sub. nom. Pavkovic v. Tidwell,* 461 U.S. 905, 103 S.Ct. 1874, 76 L.Ed.2d 806 (1983), the Seventh Circuit explicitly endorsed *Moore's* categorization of Pennsylvania's interim assistance benefits as loans, using this classification as a loan as a ground to distinguish the situation presented by the Pennsylvania case from the challenged statutory and regulatory scheme at issue in *Tidwell.*[2]

Similarly, *Gillens v. Colorado Department of Social Services,* 644 P.2d 97 (Colo. App.1982), construed a Colorado interim assistance program that closely parallels New York's Home Relief program. Under Colorado's Aid to the Needy and Disabled program ("AND"), applicants awaiting SSI determinations may obtain public assistance from the state. As with Home Relief, AND payments are recoverable by the state upon receipt by an individual of SSI. AND recipients are required to sign authorization forms allowing direct deduction from their retroactive SSI checks of the amount of state aid received. In the event that a person refused to grant such autho-

rization, Colorado would still provide AND if the individual was otherwise eligible, but inform him that recovery action would be taken once SSI benefits were received. Reviewing this scheme, the Colorado court concluded, "Thus, in effect, the AND benefits were a loan from the state, repayable when and if the applicant received SSI." 644 P.2d at 99.

The USDA, State DSS and Nassau DSS defend their practice and policy of treating Home Relief as countable income for Food Stamp purposes on several grounds. First, defendants argue that the Court's acceptance of plaintiffs' contentions would require the striking down of the Interim Assistance Reimbursement Program ("IAR"), 42 U.S.C. § 1383(a)(1), thus destroying states' incentive to advance funds to applicants awaiting determinations of eligibility for federal benefits.

The IAR was established in response to the Supreme Court's holding in *Philpott v. Essex County Welfare Board,* 409 U.S. 413, 93 S.Ct. 590, 34 L.Ed.2d 608 (1973), that the Social Security Act's bar of transfers or assignments of Social Security benefits, 42 U.S.C. § 407, prevented state welfare departments from requiring recipients of such benefits to reimburse the departments for benefits received. Subsequent to the Supreme Court's decision, Congress amended the Social Security Act so as to provide, " ... [T]he Secretary may, upon written authorization by an individual, withhold benefits due with respect to that individual and may pay to a State (or a political subdivision thereof if agreed to by the Secretary and the State) from the benefits withheld an amount sufficient to reimburse the State (or political subdivision)." 42 U.S.C. § 1383(g)(1). A House report on amendments to the Social Security Act makes clear that the IAR was "enacted in 1974 for the purpose of providing Federal Reimbursement to states for interim assistance payments made to individuals awaiting final determination on their applications

**2.** *Tidwell* was a class action challenging Illinois' method of providing for payment of Social Se-

curity disability benefits to institutionalized mental patients.

for benefits from the supplemental security income program for the aged, blind and disabled. The IAR program was established to alleviate hardships on potential SSI recipients resulting from delay in determination of SSI eligibility." 1976 U.S. Code Cong. & Admin. News 1726, 1727. Furthermore, it was Congress' view that, "in the absence of this reimbursement provision, no State would have the incentive to make interim payments." *Id.* at 1729–30. The IAR authorizes the arrangements entered into by plaintiffs, the State and Nassau DSS's, and HHS.

Contrary to defendants' apparent belief, however, the validity of the IAR is not at issue in this case. Plaintiffs nowhere challenge the legitimacy of the IAR as enacted or administered. The IAR will in no way be disturbed by a holding that Home Relief should properly be reclassified as excludable income upon receipt of a retroactive SSI payment. The local DSS's will be unhindered in their ability to recoup directly from HHS the interim assistance previously supplied to successful SSI applicants.

As a second ground for defense of their policy of treating Home Relief as countable income, defendants invoke the desirability of maintaining uniform national standards for the SSI and Food Stamp programs. The Court is at a loss as to how exactly requiring defendants to treat Home Relief in a manner consistent with the provisions of the Food Stamp Act and the Secretary of the USDA's regulations governing the categorization of loans undermines such uniformity. The Court's holding today does not affect to the slightest degree the eligibility requirements of the SSI programs. As to the Food Stamp program, the reclassification sought in fact furthers the desired uniformity by mandating that the interim assistance provided in New York be categorized in a manner consistent with other forms of loans throughout the country.

The USDA, State DSS, and Nassau DSS employ as a further basis for the defense of their policy the contention that the IAR was intended in part to avoid duplication of payments by federal and state agencies. Defendants also note that the State DSS's Memorandum on "Eligibility for Home Relief-Federal SSI Benefits," prepared in connection with the 1981 amendments for N.Y. Soc.Serv.Law § 158, states, "The State Department of Social Services and the New York City Human Resources Administration have worked closely with the [federal Social Security Administration] to develop procedures directed toward effectively ensuring reimbursement for Interim Assistance provided and protecting the State from making payments that duplicate SSI payments." 1981 N.Y.Laws 2456. However, by allowing plaintiffs to recover retroactive awards of Food Stamps as a result of reclassification of Home Relief upon receipt of SSI benefits, the Court will not cause the duplication of payments defendants fear. It should be stressed once again that plaintiffs do not challenge the IAR program itself and nothing in the Court's opinion should be read as impeding the State and local DSS's from recouping the interim assistance they provide needy New York residents through direct deductions from retroactive SSI checks sent them by HHS.

Defendants also put forth the argument that the interim assistance provided by New York is best seen not as a loan, but as an "advance." This position is consistent with that taken by the USDA in its letter to plaintiffs' counsel written shortly before this litigation ensued, which states, in relevant part:

> Your contention that such "interim assistance" is a loan is not correct. This money is simply an advance on a scheduled payment that the household is entitled to receive. The portion of the SSI check which is reimbursed to the state is not counted as income. This is the most fair and equitable method of income accounting for it counts all income when the client actually has it in hand, and available for spending on food. Advances on income are required to be considered as income by 7 C.F.R. 273.-10(c)(2).

Exhibit K, Plaintiffs' Notice of Motion for Summary Judgment.[3]

The idea that Home Relief is an "advance on a scheduled payment" and therefore not excludable from income as a loan is flawed in a number of respects. For one, the denomination of monies supplied to another as an "advance" by no means necessarily takes the payment out of the realm of a "loan." Advances are quite often considered loans, *e.g.*, *Dixey v. Federal Compress & Warehouse Co.*, 132 F.2d 275, 278 (8th Cir.1942); *Capo v. C–O Two Fire Equipment Co.*, 93 F.Supp. 46 (D.N.J.1950); *Johns v. Jaeb*, 518 S.W.2d 857, 860 (Tex. App.1974) and, in fact, many cases have *defined* loans as an advance of money, *e.g.*, *Ramo, Inc. v. English*, 500 S.W.2d 461, 468 (Tex.1973); *Whittemore Homes, Inc. v.*

*Fleishman*, 12 Cal.Rptr. 235, 236, 190 Cal. App.2d 554, 555 (Cal. 4th Dist.1961).[4]

Furthermore, the term "advance" connotes an obligation by the party providing the money to pay this money to the receiving party at some later date. In the traditional situation involving an advance, there exists some pre-existing relationship between the parties under which, assuming the continuation of this relationship, the party advancing the money would ordinarily be obligated to transfer the sum advanced at a later date in any event. The payment of the sum supplied, in other words, is literally "advanced," *i.e.*, "move[d] forward" or "provide[d] ahead of time," Webster's Third New International Dictionary 30; there is a transfer of pos-

---

**3.** 7 C.F.R. § 273.10(c)(2) reads:

*Income only in month received.* (i) Income anticipated during the certification period shall be counted as income only in the month it is expected to be received, unless the income is averaged. Whenever a full month's income is anticipated but is received on a weekly or biweekly basis, the State agency shall convert the income to a monthly amount by multiplying weekly amounts by 4.3 and biweekly amounts by 2.15, use the State Agency's PA conversion standard, or use the exact monthly figure if it can be anticipated for each month of the certification period. Nonrecurring lump sum payments shall be counted as a resource starting in the month received and shall not be counted as income.

(ii) Wages held at the request of the employee shall be considered income to the household in the month the wages would otherwise have been paid by the employer. However, wages held by the employer as a general practice, even if in violation of law, shall not be counted as income to the household, unless the household anticipates that it will ask for and receive an advance, or that it will receive income from wages that were previously held by the employer as a general practice and that were, therefore, not previously counted as income by the State agency. Advances on wages shall count as income in the month received only if reasonably anticipated as defined in paragraph (c)(1) of this section.

(iii) Households receiving State or Federal assistance payments, such as PA or GA benefits, SSI benefits or social security payments, on a recurring, monthly basis, shall not have their monthly income from these sources varied merely because mailing cycles may cause two payments to be received in one month and none in the next month.

**4.** Black's Law Dictionary 48 (5th ed. 1979) defines "advance" as:

To move something forward in position, time or place. To pay money or render other value before it is due; to furnish something before an equivalent is received; to loan; to furnish capital in aid of a projected enterprise, in expectation of return from it. To supply beforehand; to furnish on credit or before goods are delivered or work done; to furnish as a part of a stock or fund; to pay money before it is due; to furnish money for a specific purpose understood between the parties, the money or sum equivalent to be returned; furnishing money or goods for others in expectation of reimbursement; money or commodities furnished on credit. A loan, or gift of money advanced to be repaid conditionally; may be equivalent to "pay.".

and "advances" as:

Moneys paid before or in advance of the proper time of payment; money or commodities furnished on credit; a loan or gift, or money advanced to be repaid conditionally. Payments advanced to the owner of property by a factor or broker on the price of goods which the latter has in his hands, or is to receive, for sale.

Webster's Third New International Dictionary 30 defines "advance" to mean for legal purposes "to furnish by way of an advancement" or "to supply (as money or other value) beforehand in expectation of repayment or other future adjustment," giving as examples "advance an employee a week's pay as a loan" and "to farmers willing to raise soybeans, seed is advanced by the company."

session in advance of the date upon which such a transfer would otherwise ordinarily have transpired. An advance of wages, for instance, is the payment by an employer to an employee of money which the employee under usual circumstances would have received anyway, albeit at some future point in time.

The relationship between the Nassau DSS and Home Relief recipients presents quite a different situation. The Nassau DSS is not otherwise obligated to provide applicants the interim assistance that it supplies them upon compliance with certain conditions regarding repayment. Home Relief does not constitute a "stepped up" payment of an obligation to become due some time down the road. Additionally, any future payments to which the Home Relief beneficiaries might be entitled derive from the federal SSI program, not the state public assistance program. In providing Home Relief, the State and local DSS's are not acting as agents for the federal officials who run the SSI program. The Court is of the view that the consideration of monies supplied by state and local entities to help tide over individuals who hope to obtain funds from a completely separate source as "advances" on the payments purportedly due from this third party would distort beyond recognition the commonly understood meaning of the term.[5]

Also, the USDA's position that Home Relief constitutes an "advance on a scheduled payment" is undermined by its own regulations and the realities of the situation that faces SSI applicants. 7 C.F.R. § 273.10(c)(1)(i) provides:

§ 273.10 Determining household eligibility and benefits levels.

(c) Determining income—(1) Anticipating income. (i) For the purpose of determining the household's eligibility and level of benefits, the State agency shall take into account the income already received by the household during the certification period and any anticipated income the household and the State agency are reasonably certain will be received during the remainder of the certification period. If the amount of income that will be received, or when it will be received, is uncertain, that portion of the household's income that is uncertain shall not be counted by the State agency. For example, a household anticipating income from a new source, such as a new job or recently applied for public assistance benefits, may be uncertain as to the timing and amount of the initial payment. These moneys shall not be anticipated by the State agency unless there is reasonable certainty concerning the month in which the payment will be received and in what amount. . . . .

Defendants have not vigorously disputed the fact that the amount and timing of actual receipt of SSI benefits often remains in doubt until HHS makes a final determination on an applicant's eligibility. SSI benefits for which a Home Relief recipient has applied, therefore, cannot accurately be characterized as "anticipated income" as to which the applicant and local DSS can be "reasonably certain" of the amount and date of scheduled receipt. Thus the USDA's own regulations themselves mandate that defendants' attempt to portray Home Relief as an "advance on a scheduled payment," includable as income for Food Stamp purposes, must be rejected.

Defendants also appear to argue, at least implicitly, that plaintiffs' contention that Home Relief benefits should be properly treated as loans is undermined by the fact that, at the time the Nassau DSS decides to grant needy individuals interim assistance, any obligation on the part of recipients to return the amounts received is merely conditional, i.e., any right of local DSS's to recoup the Home Relief benefits disbursed is contingent on the applicant's actual receipt at some point in the future of a retroactive SSI check. Certain courts have taken the position that an agreement cannot constitute a loan absent an absolute obligation of repayment. E.g., Bankers Mortgage Co. v. Commissioner of Internal

---

5. See supra note 4.

*Revenue,* 142 F.2d 130, 131 (5th Cir.1944); *Northern Mining Corp. v. Trunz,* 124 F.2d 14, 16–17 (9th Cir.1941), *cert. denied,* 316 U.S. 664, 62 S.Ct. 944, 86 L.Ed. 1740 (1942); *Dean v. Butz,* 428 F.Supp. 477, 481 (D.Hawaii 1977). On the other hand, many courts have long recognized that contingency of the obligation of repayment does not necessarily take a transaction outside the scope of that which most properly should be categorized a loan. *E.g., United Gas Improvement Co. v. Commissioner of Internal Revenue,* 240 F.2d 312, 318 (3d Cir. 1956); *Dixey,* 132 F.2d at 278; *Island Petroleum Co. v. Commissioner of Internal Revenue,* 57 F.2d 992, 994 (4th Cir.), *cert. denied,* 287 U.S. 646, 53 S.Ct. 92, 77 L.Ed. 558 (1932); *American Bemberg Corp. v. United States,* 150 F.Supp. 355, 360 (D.Del. 1957), *affirmed,* 253 F.2d 691 (3d Cir.), *cert. denied,* 358 U.S. 827, 79 S.Ct. 45, 3 L.Ed.2d 67 (1958); *Capo,* 93 F.Supp. at 6; *see also Luckenbach v. W.J. McCahan Sugar Refining Co.,* 248 U.S. 139, 148, 39 S.Ct. 53, 54–55, 63 L.Ed. 170, 175 (1918).

This Court tends toward the view that where all other indicia point to a finding that a given agreement falls into the category of transactions generally perceived to be loans, a certain indefiniteness as to the necessity of repayment need not necessarily alter such a denomination. N.Y.Soc. Serv.Law § 158(a), as the New York Court of Appeals has itself recognized, establishes a system of payments designed as temporary aid to low income households to be recovered upon receipt by individuals of federal SSI benefits. Additionally, the authorization of repayment form that applicants must sign makes clear that the Nassau DSS fully expects to recoup the money it supplies to those persons eligible for Home Relief.[6] It is important to remember that the intended beneficiaries of New York's Home Relief program and the federal SSI program are the same group of needy persons. Most, if not all, individuals who qualify for Home Relief will also ultimately be declared eligible for SSI as well. The interim assistance granted plaintiffs, therefore, is essentially analogous to a loan upon which repayment is in all likelihood, but not to an absolute certainty, guaranteed.

The Nassau DSS's position is much like that of a creditor whose loan has been only imperfectly secured: The DSS believes it will be able to collect the monies it has paid out, but knows that such recoupment will become a reality only if the recipient of the loan later has within his legal entitlement a certain asset from which the debt can be satisfied. Or, moving away from the commercial realm to an area somewhat more analogous to the relationship between the DSS's and needy individuals, the Home Relief program can be seen as akin to a loan by a parent or friend to someone who at the time of the loan lacks the funds to repay it but promises to do so when he comes into money or property that both the lender and borrower anticipate will soon become available to him. The funds the lender advances should be considered no less a loan merely because he agrees that, if for some reason the borrower never actually receives the expected money or property, any obligation or repayment will be extinguished.

Finally, it should be observed that the interim assistance program at issue in the case now before the Court contrasts markedly with the scheme in question in *Dean,*

---

6. Form DSS 2424, entitled "Repayment of Interim Assistance Authorization," reads in pertinent part:

I/We, _____, authorize the Secretary of the United States Department of Health, Education and Welfare [now HHS] to make my/our first Supplemental Security Income payment (SSI) to the [Nassau County] Department of Social Services.

I/We further authorize the [Nassau County] Department of Social Services, as a condition of receiving public assistance in accordance with New York State policy to deduct from that first payment an amount equal to the sum of all public assistance benefits made to or on behalf of me/us by such Department of Social Services from the beginning of the month I/we applied for and were eligible for Supplemental Security Income.

428 F.Supp. 477, which held that certain housing benefits made available by the Hawaii Department of Social Services and Housing ("DSSH") were not excludable from Food Stamp income calculations as loans. The DSSH provides funds to eligible recipients for the payment of housing security deposits. Upon termination of a recipient's tenancy, the deposited money may be returned to the DSSH, used as a security deposit for new housing, or retained by the former tenant as a resource under the DSSH's resource retention policy. The *Dean* court concluded that given these options, only one of which involved any repayment of money to the DSSH, the state benefits could not be considered loans. Such options do not exist under New York's Home Relief program. Home Relief recipients incur an absolute obligation that the interim assistance benefits be repaid once they are declared eligible for SSI and a retroactive SSI check issued.

In any event, any possible effect of the contingent aspect of the arrangement between the local DSS's and Home Relief recipients at the time the arrangement is entered into need not affect the Court's holding in the instant case. Plaintiffs do not now contend that interim assistance must be categorized as an excludable loan proceed from the moment it is first provided to an eligible New York resident. Rather, they merely argue that defendants should be required to reclassify the amount of Home Relief actually repaid to the Nassau DSS through deductions from retroactive SSI benefits ultimately awarded to individual recipients and retroactively restore the Food Stamp benefits withheld as a result of the treatment of the Home Relief payments as countable income.[7] Thus, plaintiffs seek relief affecting the categorization of Home Relief solely at a stage at which any contingency of the obligation to repay the interim assistance has been elimi-

nated by the occurrence of the single condition upon which the obligation had depended.

## IV.

On questions of statutory construction, courts must be careful to accord the proper deference to the interpretation given the statute by the agency or officers charged with its administration. When what is at issue is not only the proper construction of a statute, but also interpretation of an administrative regulation, deference is even more clearly in order. *Udall v. Tallman*, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965). An agency's interpretation of its own regulations is of controlling weight unless inconsistent with Congressional purpose or the regulations themselves or is plainly erroneous. *Morton v. Ruiz*, 415 U.S. 199, 237, 94 S.Ct. 1055, 1075, 39 L.Ed.2d 270 (1974); *Tallman*, 380 U.S. at 16, 85 S.Ct. at 801.

■ The Court concludes that, for the reasons set forth throughout this opinion, despite the deference to which defendants' interpretation of the relevant statutes and regulatory provisions is entitled, defendants' practice and policy as to the classification of Home Relief for purposes of determining eligibility for Food Stamp benefits is at odds both with the intent of Congress as expressed in the Food Stamp Act and the legislative history underlying the Act and its amendments over the years, and with the USDA's regulations themselves. § 2014(d)(4) of the Food Stamp Act and 7 C.F.R. § 273.9(c)(4) require that "all loans," except for educational loans on which repayment is deferred, must be excluded from income countable in calculations of entitlement to Food Stamp benefits. Home Relief constitutes such an excludable loan. Defendants' practice and policy therefore cannot stand.[8]

---

7. Originally, plaintiffs sought the classification of Home Relief as excludable income during the entire period it was provided applicants awaiting determinations of SSI eligibility. Apparently in response to the Court's decision dismissing certain of the named plaintiffs' claims for lack

of standing, *Biggs*, 629 F.Supp. 1574, plaintiffs have narrowed their request for relief.

8. *As the Court has concluded that defendants' practice and policy violates the Food Stamp Act and the accompanying regulations promulgated*

Having concluded that defendants' treatment of Home Relief is improper, the Court must now determine the scope of the relief which plaintiffs should be awarded. Plaintiffs originally sought as relief (1) declarations that defendants' practice and policy violates federal statutory and constitutional law; (2) injunctions prohibiting the continued inclusion of Home Relief as countable income and ordering State Commissioner Perales to direct local commissioners to change their policy; (3) injunctions ordering Nassau County Commissioner D'Elia to restore lost Food Stamp benefits to class members and instructing Perales to direct local commissioners in the state to do the same and report back to him concerning their department's compliance within a reasonable time after entry of judgment; and (4) costs, disbursements, and attorneys fees under 42 U.S.C. § 1988. In its March 20 decision, the Court held that plaintiffs lack standing to pursue the declaratory and prospective injunctive relief sought, but could continue their lawsuit insofar as they seek only retroactive relief. *Biggs*, 629 F.Supp. 1574.

Plaintiffs' papers submitted to the Court in support of their motion for summary judgment seem to indicate that plaintiffs have modified their original request for relief so as better to conform to the Court's previous orders handed down upon consideration of the motions for dismissal and class certification. Nonetheless, plaintiffs still appear to seek to have the Court enter judgment granting them declaratory and prospective injunctive relief they lack standing to pursue. The Court finds that plaintiffs are entitled only to the following relief:

1. An injunction directing defendants to:

(a) recalculate the Food Stamp benefits to which plaintiffs would have been entitled had the Home Relief each member of the plaintiff class received been reclas-

sified as excludable income upon the class member's actual receipt of SSI benefits and the local DSS's deduction of interim assistance from the class member's retroactive SSI check as authorized.

(b) award retroactively to each member of the plaintiff class the amount of Food Stamp benefits lost as a result of defendants' improper treatment of Home Relief.

2. An injunction directing the State DSS to instruct all local DSS commissioners to act so as to make the relief provided for in 1(a) and (b) above available to class members within their respective jurisdictions as expeditiously as is feasible.[9]

## V.

For the reasons discussed above, the Court holds that plaintiffs' motion for summary judgment should be granted and defendants' cross-motions for summary judgment denied. The Clerk of the Court is directed to enter judgment in favor of plaintiffs. Plaintiffs are entitled to relief as follows:

1. Defendants are to:

(a) recalculate the Food Stamp benefits to which plaintiffs would have been entitled had the Home Relief each member of the plaintiff class received been reclassified as excludable income upon the class member's actual receipt of SSI benefits and the local DSS's deduction of interim assistance from the class member's retroactive SSI check as authorized.

(b) award retroactively to each member of the plaintiff class the amount of Food Stamp benefits lost as a result of defendants' improper treatment of Home Relief.

2. The State DSS is to instruct all local DSS commissioners to act so as to make the relief provided for in 1(a) and (b)

---

by the Secretary of the USDA, it need not reach the issue of whether defendants' actions also constitute a deprivation of plaintiffs' constitutionally guaranteed right to equal protection under the law.

**9.** The Court does not now rule on the availability of an award of costs, disbursements, or attorneys fees under 42 U.S.C. § 1988, as the parties have not briefed this issue.

available to class members within their respective jurisdictions as expeditiously as is feasible.

SO ORDERED.